**CHRISTIAN CARE CENTERS, INC., Appellant,**

v.

**Jane GOLENKO, Jean Miller, and Judy Miller, Individually and on Behalf of The Estate of Nell Connally, Deceased, Appellees.**

No. 05–09–01521–CV.

Court of Appeals of Texas, Dallas.

Nov. 4, 2010.

Rehearing Overruled Jan. 6, 2011.

Delta Sue Best, Allison L. Spruill, Best & Spruill, P.C., Austin, TX, Appellant.

Michael Tate Barkley, Sugar Land, TX, Susan Cassidy Cooley, Schell, Mitchell & Cooley LLP, Addison, TX, Roger Arash Farahmand, Farahmand Law Firm, P.C., Dallas, TX, R. Alan York, Goodwin Pappas Langley Ronquillo, LLP, Houston, TX, for Appellees.

Before Justices FITZGERALD, MURPHY, and FILLMORE.

## OPINION

Opinion By Justice FILLMORE.

This interlocutory appeal follows the trial court's refusal to dismiss the health care liability claims of appellees Jane Golenko, Jean Miller, and Judy Miller, Individually and on behalf of the Estate of Nell Connally, against Christian Care Centers, Inc. Christian Care complains the trial court erred by denying its motion to dismiss because appellees' experts are not qualified to render opinions contained in their reports and the reports do not constitute good faith efforts to comply with chapter 74 of the civil practice and remedies code. We affirm the trial court's order.

### Background

Jay Haberman suffered from early-onset Alzheimer's disease. After having a seizure at home, Haberman was admitted to Centennial Medical Center. While he was hospitalized, Haberman allegedly exhibited aggressive and combative behavior that required restraints and supervision by a personal attendant. Haberman was subsequently transferred to Christian Care's Alzheimer's Unit. Haberman allegedly continued to exhibit aggressive behavior at

Christian Care. Appellees assert that the day following his admission to Christian Care, Haberman was unsupervised in the dining room of the facility. Nell Connally, a resident of Christian Care, was also in the dining room using her "merry walker," which is a walker that includes a seat for the user. Haberman allegedly grabbed the walker and turned it over, causing Connally to hit her head on the floor. Connally later died from a subdural hematoma caused by the fall.

Appellees brought a wrongful death action against Haberman. In their second amended petition, appellees also asserted health care liability claims against Christian Care. Appellees alleged Christian Care was negligent in its care of Connally by failing to properly evaluate Haberman prior to admitting him to Christian Care, failing to manage, restrain, and evaluate Haberman following his admission, and failing to protect Connally from Haberman. Appellees timely served Christian Care with expert reports by Dr. Lige Rushing, a physician who is board certified in internal medicine, rheumatology, and geriatrics, Suzanne Frederick, a registered nurse, and Sid Gerber, a licensed nursing home administrator.

Christian Care objected to the expert reports and moved to dismiss appellees' claims on the grounds that appellees' experts are not qualified to render opinions concerning the applicable standard of care and causation and the expert reports do not constitute good faith efforts to meet the requirements of section 74.351 of the civil practice and remedies code. The trial court denied the motion to dismiss, and Christian Care brought this interlocutory appeal.

## Standard of Review

We review a trial court's order on a motion to dismiss a health care liability claim for an abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 877 (Tex.2001). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002) (per curiam). A trial court abuses its discretion when it clearly fails to analyze and determine the law correctly or applies the law incorrectly to the facts. *Petty v. Churner,* 310 S.W.3d 131, 134 (Tex.App.-Dallas 2010, no pet.)

## Analysis

Within 120 days of filing a health care liability claim, a plaintiff must serve an expert report with the expert's curriculum vitae on each defendant against whom a liability claim is asserted. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (West Supp. 2010). An "expert report" is a:

> written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6). The trial court is required to grant a motion challenging the adequacy of a report only if the report does not constitute an objective good faith effort to comply with the statutory requirements. *Id.* § 74.351(b)(2), (*l*). In determining a report's sufficiency, the court may not look beyond the report itself because all information relevant to the inquiry should be contained with the document's four corners. *Palacios,* 46 S.W.3d at 878.

## Standard of Care

Christian Care first argues that appellees' experts are not qualified to render an opinion as to the standard of care applicable to Christian Care. An expert is qualified to render an opinion regarding whether a health care provider departed from the accepted standards of care if the expert:

(1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

(2) has knowledge of accepted standards of care for health care providers for the diagnosis, care or treatment of the illness, injury, or condition involved in the claim; and

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.402(b) (West 2005). To assist the court in making a determination as to whether the expert is qualified on the basis of training or experience, the trial court must consider whether, at the time the claim arose or at the time the testimony is given, the witness: (1) is certified by a licensing agency or a professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and (2) is actively practicing health care in rendering health care services relevant to the claim. *Id.* § 74.402(c).

## Dr. Rushing

Christian Care contends Dr. Rushing is not qualified to testify about the applicable standard of care because he is not actively practicing health care in an area relevant to the claim. Christian Care asserts that, although Dr. Rushing is board certified in internal medicine and geriatrics, he does not have the "nursing home experience" to testify as to the standard of care applicable to nurses and nurses aides employed in nursing facilities. Finally, Christian Care contends Dr. Rushing has never worked for a nursing home screening patients for admission to a certified Alzheimer's unit and, therefore, is not qualified to opine about Christian Care's decision to admit Haberman.

■ Christian Care asserts we should consider deposition testimony given by Dr. Rushing in another case to "disqualify" him from opining about issues relating to nursing care in a certified Alzheimer's unit. We question whether a defendant can rely on evidence not contained within the expert's reports to attack the expert's qualifications. *See Mem'l Hermann Healthcare Sys. v. Burrell,* 230 S.W.3d 755, 758 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (declining to consider excerpts from expert's deposition in other cases, affidavit of another doctor, and standards promulgated by Infectious Diseases Society of America because "analysis of the qualifications of an expert under section 74.351 is limited to the four corners of the expert's report and curriculum vitae"); *In re Windisch,* 138 S.W.3d 507, 511 (Tex. App.-Amarillo 2004, orig. proceeding) (declining to consider expert's testimony given at hearing on motion to dismiss because determination of expert's "qualifications to provide an expert report must be made on the basis of the contents of the report and curriculum vitae"); *see also Mosely v. Mundine,* 249 S.W.3d 775, 779 (Tex.App.-Dallas 2008, no pet.) (analysis of expert's qualifications limited to expert's report and curriculum vitae). However, we need not reach the issue because the testimony re-

lied upon by Christian Care, while attached to its brief, is not in the record. We cannot consider documents attached to a brief "if they are not formally included in the record on appeal." *Cantu v. Horany*, 195 S.W.3d 867, 870 (Tex.App.-Dallas 2006, no pet.).

■ We, therefore, turn to whether Dr. Rushing's report and curriculum vitae demonstrate he is qualified to opine about the applicable standard of care. Dr. Rushing is licensed to practice medicine in Texas and is board certified in internal medicine, rheumatology, and geriatrics. He is actively engaged in the practice of these three specialties and is an attending physician at Presbyterian Hospital in Dallas. He has "served as a primary care physician for more than 10,000 patients in hospitals, nursing homes, assisted living facilities, and patients who had Alzheimer's disease." He regularly engages in the diagnosis and treatment of patients with Alzheimer's disease. He has had patients with violent behavior similar to Haberman's behavior who represented a threat to others as well as themselves and patients who required geriatric psychiatric care. He has "worked closely with and written orders for, and supervised the execution of these orders for the care and treatment of [his] patients and supervised the nurses (registered nurses, licensed vocational nurses, and [certified nursing assistants]), who have been assigned to provide nursing care, including assessment for transfer and admission assessments for [his] patients under similar circumstances" as Haberman. As a result, he is "intimately familiar with the specific standards of care that are required of the facilities and caregivers and the physicians who provide care and treatment for patients" such as Haberman.

According to Dr. Rushing, the standard of care required Christian Care and its staff to "properly assess Mr. Haberman's needs prior to his admission to be certain that they indeed could meet his needs." Dr. Rushing specifically questions Christian Care's "failure to properly assess Mr. Haberman prior to accepting him for transfer" and opines that if "a proper assessment had been done, it would have been obvious that the Christian Care Center could not meet Mr. Haberman's needs i.e. one-on-one supervision, restraints, and intensive psychiatric care and treatment that Mr. Haberman required." Further, after Haberman's transfer, the nursing staff had the opportunity to review Haberman's medical records and assess his condition. Dr. Rushing questions the nursing staffs' failure to provide one-on-one supervision of Haberman, including the failure to adequately supervise Haberman in the dining room at the time he turned over Connally's walker, and failure to report Haberman's clinical status and behavior to the director of nurses or the administrator of the facility.

■ Not every licensed doctor is automatically qualified to testify on every medical question. *Broders v. Heise*, 924 S.W.2d 148, 152 (Tex.1996). However, "expert qualifications should not be too narrowly drawn." *Larson v. Downing*, 197 S.W.3d 303, 305 (Tex.2006) (per curiam). Rather, the trial court should determine whether the proffered expert has "knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Broders*, 924 S.W.2d at 153–54; *see Chester v. El–Ashram*, 228 S.W.3d 909, 912 (Tex.App.-Dallas 2007, no pet.). The focus is on whether the expert's expertise goes to the very matter on which he is to give an opinion. *Broders*, 924 S.W.2d at 153.

The essential claim in this case involves the standard of care applicable to the assessment and care of individuals with Alzheimer's disease. Thus, the relevant question is not the narrow issue of whether Dr. Rushing has worked in a nursing home or served on a committee evaluating potential patients for admission to a nursing home. Rather, it is the broader issue of whether Christian Care and its staff should have recognized Haberman's condition was such that Christian Care could not provide the care Haberman needed or could not protect its other residents from Haberman. Dr. Rushing's report and curriculum vitae show he is certified in geriatrics and internal medicine. He has treated patients with conditions similar to Haberman's condition and has been involved in the assessment of these patients for transfer and admission to various facilities. He has also supervised nurses in the care and assessment of his patients. The trial court did not abuse it discretion by finding Dr. Rushing is qualified to testify about the standard of care applicable to assessing a patient with a condition similar to Haberman's for admission into a particular facility and the needs of the patient once admitted. *See Baylor Med. Ctr. at Waxahachie v. Wallace*, 278 S.W.3d 552, 558 (Tex.App.-Dallas 2009, no pet.) (physician who stated he was familiar with standard of care for nurses and for prevention and treatment of injury involved in claim qualified to opine about standard of care for nurses); *IHS Acquisition No. 140 Inc. v. Travis*, No. 13–07–00481–CV, 2008 WL 1822780, at \*5 (Tex. App.-Corpus Christi 2008, pet. denied) (mem. op.) (doctor specializing in geriatrics qualified to opine about standard of care applicable to nursing home).

### Suzanne Frederick

■ Christian Care next argues Frederick is not qualified to testify about the applicable standard of care because she has never been a full-time employee of a nursing home, never held a job that entailed admitting patients into a nursing home, and does not actively practice health care in a nursing home. Frederick is a board certified gerontological nurse and a certified wound care nurse. She has a master of science degree in nursing administration. She teaches nursing students at McLennan Community College and educates nursing students in nursing home and hospital settings, including caring for Alzheimer's patients, administering medication, transcribing orders, supervising residents, and notifying physicians of residents' behaviors. From 2003 through 2005, she taught a nursing administration class at the University of Texas at Arlington. She has worked as a nursing supervisor and a staff nurse at a hospital and served as the Subacute Program Director/Staff RN at a nursing home for seven years.

Frederick opined on the standard of care applicable to Christian Care for the admission of Haberman to Christian Care and the care of Haberman by the Christian Care nursing staff following his admission. Because Dr. Rushing and Gerber are qualified to opine about the standard of care applicable to Christian Care in deciding to admit Haberman into the facility, we need not decide whether Frederick was also qualified to do so. *See* Tex.R.App. P. 47.1. Turning to the nursing staff, Frederick opined that the standard of care required the nurses at Christian Care to accurately transcribe Haberman's medications onto the physician's orders, have a verification system to ensure the accuracy of the orders and the medication administration record, administer only the medications prescribed by the physician, contact the physician to verify the orders as written on the medication profile report,

notify the physician of Haberman's behavior, and adequately assess and supervise Haberman.

Issues relating to administering medication, assessing a patient's condition, and contacting a physician about a patient's medication and condition are not unique to the care of residents in a nursing home. Frederick's curriculum vitae demonstrates she has worked as a nurse and nursing supervisor and educated students about caring for Alzheimer's patients, administering medication, transcribing orders, supervising residents, and notifying physicians of resident behaviors. We conclude the trial court did not abuse its discretion in finding Frederick was qualified to testify about the standard of care applicable to the nursing staff at Christian Care.

### *Sidney Gerber*

■ Christian Care contends Gerber, a licensed nursing home administrator, is not qualified to opine about the standard of care applicable to Christian Care because he is not a licensed health care provider and does not practice health care in an area relevant to appellees' claims. In determining whether an expert is qualified on the basis of training and experience to render an opinion about the standard of care, a trial court must consider whether, at the time the claim arose or at the time the expert gave his opinion, that person (1) is certified by a licensing agency or a professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and (2) is actively practicing health care in rendering health care services relevant to the claim. Tex. Civ. Prac. & Rem. Code § 74.402(c). However, the factors in section 74.402(c) are not mandatory elements that must be proved before a witness is qualified as an expert. *Heritage Gardens Healthcare Ctr. v. Pearson,* No.

05–07–00772–CV, 2008 WL 3984053, at *5 (Tex.App.-Dallas 2008, no pet.) (mem. op.). Whether Gerber is certified by a licensing agency or a professional certifying agency or is actively practicing health care are only two factors to be considered in determining whether Gerber is qualified on the basis of training and experience to offer the opinions contained in his report. *Id.*

Further, for purposes of determining whether an expert witness is qualified to opine about the standard of care applicable to a health care provider, "practicing health care" includes:

(1) training health care providers in the same field as the defendant health care provider at an accredited educational institution; or

(2) serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider.

Tex. Civ. Prac. & Rem.Code Ann. § 74.402(a). "Health care" includes any act "performed or furnished, or that should have been performed or furnished" by the health care provider for, to, or on behalf of the patient. *Id.* § 74.001(a)(10). A "health care liability claim" includes a cause of action against the health care provider for a departure from the standard of care for "safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant." *Id.* § 74.001(a)(13). Christian Care's provision of safety, professional, or administrative services to Connally constitutes health care. Gerber is "practicing health care" if he (1) is educating health care providers in safety, professional, or administrative services provided by nursing facilities at an accredited education institution, (2) is serving as a consultant in safety, professional, or administrative services relevant to nursing facilities, or (3) is licensed, certified, or

registered relating to the provision of safety, professional, or administrative services by nursing facilities. *See id.* § 74.402(a).

Appellees claim Christian Care failed to properly assess Haberman's condition prior to admitting him into Christian Care's facility. Gerber is licensed as a nursing facility administrator in Texas and has eight years of experience managing and operating nursing home facilities. He has knowledge of the state and federal regulations governing nursing home facilities. As a nursing home administrator, he worked closely with nursing home management and staff. He is currently a consultant in the field of long-term care management and provides quality assurance monitoring and inspection of facilities on behalf of the facilities' management. He also assists families of nursing home residents with long-term care planning and management support, including the verification of care compliance, care coordination, and review of care with physicians and long-term care facilities. He teaches classes in long-term care management and administration to nursing home administrator candidates at the University of Texas Health Science Center and San Jacinto College.

In Gerber's opinion, the standard of care for a nursing facility includes an assessment of the prospective resident at the hospital prior to admission. The purpose of this assessment is for a nursing facility professional to thoroughly and accurately assess a prospective resident's medical or mental conditions to determine whether the placement is appropriate, the nursing facility's capabilities to provide the necessary care, and the safety risks to both the resident and other residents. The standard of care requires the facility to admit "only residents who it can assure that it has the abilities to provide adequate and sufficient care by competent staff, owners, operators, and administration based on the care needs of the individual resident and in compliance with all standards that regulate the nursing facility."

Gerber opined that Christian Care failed to comply with the applicable standards of care by not adequately assessing Haberman prior to admission. In Gerber's opinion, if Christian Care had sent a nurse to evaluate Haberman prior to admission, it would have "had a much greater understanding of the significant risk of admitting Mr. Haberman into the general population with other residents at the facility, would have been prepared to manage his aggression and violent behavior, would have taken steps to protect other residents from potential harm inflicted by Mr. Haberman, could have refused his admission and acceptance to the nursing facility, and ultimately could have prevented Ms. Connally's death." Finally, in Gerber's opinion, Christian Care failed to adhere to its own policies and procedure for evaluating Haberman for placement and, if it had done so, Haberman would not have been deemed appropriate for admission under Christian Care's criteria.

Gerber is licensed in nursing home administration and managed a nursing home for eight years. He has knowledge of rules and regulations applicable to nursing facilities. He teaches and performs consulting work in the field of long-term care. The trial court did not abuse its discretion by finding Gerber is qualified to opine about the standard of care for the admission of a patient with Alzheimer's disease to a nursing facility.

*Causation*

■ Christian Care next argues that appellees' experts are not qualified to address causation because Gerber and Frederick are not licensed physicians and Dr. Rushing is not qualified on the very matter

at issue in this case. "[A] person may qualify as an expert witness on the issue of the causal relationship between the alleged departure from accepted standards of care and the injury, harm, or damages claimed only if the person is a physician and is otherwise qualified to render opinions on that causal relationship under the Texas Rules of Evidence." TEX. CIV. PRAC. & REM.CODE §§ 74.351(r)(5)(C); 74.403(a) (West 2005). Neither Frederick nor Gerber is a physician and, therefore, neither is qualified to render an opinion about causation. *See Petty,* 310 S.W.3d at 135.

■ Christian Care argues Dr. Rushing is not qualified to opine about causation "for the same reasons" he is not qualified to opine about the standard of care. Under rule of evidence 702, the expert must have knowledge, skill, experience, training, or education regarding the specific issue before the court. *See* TEX.R. EVID. 702. As set out above, Dr. Rushing is licensed to practice medicine in Texas. He is board certified in internal medicine and geriatrics and is actively engaged in the practice of these specialties. He regularly engages in the diagnosis and treatment of patients with Alzheimer's disease. He has had patients with violent behavior like Haberman's behavior and who represented a threat to others as well as themselves. He has knowledge of the admission assessment process and the care needed for these patients. In his opinion, it was reasonably foreseeable that Christian Care could not meet Haberman's needs and that Haberman's behavior would likely result in injury to himself or others. We conclude the trial court did not err by concluding Dr. Rushing was qualified to opine about causation.

## Good Faith Effort

Christian Care finally argues the trial court erred by denying the motion to dis-

miss because appellees' expert reports do not constitute good faith efforts to comply with chapter 74. Specifically, Christian Care asserts all three reports pertain only to its care of Haberman, not its care of Connally, and that Dr. Rushing's opinions about causation are conclusory.

■ To constitute a good faith effort to comply with the statutory requirements, an expert report must inform the defendant of the specific conduct called into question and provide a basis for the trial court to determine that the claims have merit. *Palacios,* 46 S.W.3d at 879. It does not need to marshal all of the plaintiff's proof, but it must include a fair summary of the expert's opinion on each of the elements identified in the statute: the applicable standard of care, the breach or deviation from the standard of care, and the causal relationship between the breach and the injury. *Id.* at 878. The report cannot merely state the expert's conclusions about these elements. *Id.; Petty,* 310 S.W.3d at 134. The expert must explain the basis of his statements to link his conclusions to the facts. *Bowie Mem'l Hosp.,* 79 S.W.3d at 52; *Petty,* 310 S.W.3d at 134.

■ Contrary to Christian Care's argument, its alleged failure to properly care for Haberman is relevant to whether it breached the standard of care owed to Connally. *See Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 850 (Tex. 2005) (nursing home as a heath care provider had duty to protect resident and patient population from harming themselves and each other). Dr. Rushing, Frederick, and Gerber identified the conduct of Christian Care that was called into question—the failure to properly assess Haberman's condition and needs prior to his admission, to correctly administer medication to Haberman after admission, and to properly assess, supervise, and care for

Haberman after admission. In Dr. Rushing's opinion, Christian Care's failure to properly care for Haberman presented a danger to Connally and caused her death. The trial court did not abuse its discretion by finding appellees' expert reports informed Christian Care of the specific conduct called into question and provided a basis for the trial court to determine that the claims have merit.

■ Christian Care also asserts Dr. Rushing's report does not constitute a good faith effort to comply with section 74.351 because his opinions about causation are conclusory. In claiming the report is deficient as to causation, Christian Care focuses on Dr. Rushing's statement that, "In summary, the care and treatment rendered to Jay Haberman by Centennial Medical Center and its staff, the Christian Care Center and its staff, and Dr. Swathi Bayya fell below the accepted standard of care for the reasons described in this report and proximately caused the death of Nell D. Connally." Christian Care claims this statement shows a lack of differentiation between the health care providers and does not address viable treatment options for Connally.

The issue is whether Dr. Rushing's report, not the one statement relied upon by Christian Care, articulated a causal relationship between Christian Care's alleged failure to meet the applicable standards of care and Connally's death. *See* TEX.CIV. PRAC. & REM.CODE 74.351(r)(6). This required Dr. Rushing to link Christian Care's alleged negligence with appellees' alleged harm—the assault on Connally by Haberman. *See UHS of Timberlawn, Inc. v. S.B.*, 281 S.W.3d 207, 213–14 (Tex.App.-Dallas 2009, pet. denied) (expert report sufficiently linked health care provider's negligence to sexual assault of complainant by another patient). Haberman was allegedly aggressive and combative prior to

being admitted to Christian Care and required physical restraints and supervision by a personal attendant. His aggressive behavior allegedly continued at Christian Care. According to Dr. Rushing, the standard of care required Christian Care to properly assess Haberman's condition prior to admitting him to Christian Care and required the nursing staff at Christian Care to report Haberman's condition following his admission and to properly supervise Haberman. Dr. Rushing opined that, even though it was reasonably foreseeable that Haberman was a danger to himself or others, he was admitted to the Christian Care facility and was not properly cared for or supervised. While Haberman was unsupervised in the dining room at Christian Care, he injured Connally by turning over her walker, leading to her death. We conclude the trial court did not abuse its discretion by finding Dr. Rushing's report articulated the required causal relationship.

We overrule Christian Care's sole issue and affirm the trial court's order.