**Reverse and Remand; Opinion Filed December 31, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00498-CV

## NEXION HEALTH AT GARLAND, INC. D/B/A PLEASANT VALLEY HEALTHCARE AND REHABILITATION CENTER, Appellant
### V.
## TEMPERANCE TREYBIG, Appellee

### On Appeal from the 14th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. dc-13-12286

## MEMORANDUM OPINION
Before Justices Bridges, Lang, and Evans
Opinion by Justice Lang

This interlocutory appeal involves a medical malpractice action brought by the appellee, Temperance Treybig ("Treybig"), as Representative of the Estate of William Treybig ("Mr. Treybig"), against Nexion Health at Garland d/b/a Pleasant Valley Healthcare and Rehabilitation Center ("Nexion") and Reliant Pro Rehab, LLC ("Reliant"). Nexion, the appellant, filed a motion to dismiss pursuant to section 74.351(b) of the Texas Civil Practices and Remedies Code, alleging Treybig failed to comply with the medical expert report requirement of the Texas Medical Liability Act ("TMLA"). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (West 2011). Now, Nexion appeals from the trial court's denial of that motion to dismiss. Reliant is not a party to this appeal.

In four issues, Nexion argues the trial court abused its discretion when it denied the motion to dismiss. Specifically, Nexion contends the trial court erred because (1) the expert report "does not identify the standard of care applicable to Nexion or the actions that Nexion should have taken," (2) the expert report "failed to establish a causal relationship between Nexion's alleged negligence and Mr. Treybig's injury," (3) Treybig failed to serve Nexion with a report from a "qualified expert," and (4) the trial court failed to award Nexion its attorney's fees and costs. We decide Nexion's third issue in its favor. The expert report and curriculum vitae supplied by Treybig do not provide sufficient information regarding the knowledge and experience of the medical expert, as indicated below. Accordingly, we reverse the order of the trial court and remand the case for a determination of whether to grant Treybig a thirty-day extension to cure the deficiencies in the report. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c).

## I. FACTUAL AND PROCEDURAL BACKGROUND

From March 1, 2010, through January 14, 2013, Mr. Treybig, Treybig's father, was a resident at Pleasant Valley Healthcare and Rehabilitation Center ("Pleasant Valley"), which is a nursing home owned by Nexion. According to Treybig, "Nexion provided what [she] believed and understood was skilled nursing care and ongoing assessments of Mr. Treybig," whose medical history included, among other things, double below the knee amputations and two bilateral hip replacements. Treybig alleges Nexion "engaged, contracted with, and/or hired" Reliant, a physical therapy provider, "to provide medical care and/or therapy to Mr. Treybig while [he was] a resident at the facility." Treybig's factual theory is that during a therapy session at Nexion's facility on October 4, 2011, two of Reliant's therapists stretched Mr. Treybig and leaned their combined weight on him while ignoring his cries of pain. On or about October 11, 2011, Mr. Treybig "was diagnosed as having a compression fracture to his L4 vertebrae."

–2–

On October 11, 2013, Treybig filed a medical malpractice lawsuit against Nexion and later amended her petition to include Reliant as a defendant. Treybig alleged that the back fracture injury, "among others, was caused by [Nexion and Reliant's] failure to design and/or implement care plans that adequately addressed Mr. Treybig's conditions and failure to provide the care he required." On March 7, 2014, Treybig served Nexion and Reliant with the expert report and curriculum vitae of Dr. Lige B. Rushing ("Dr. Rushing"). Nexion and Reliant each filed a motion to dismiss under the TMLA challenging the adequacy of Dr. Rushing's expert report. After a hearing, the trial court denied both motions, and Nexion filed this appeal.

## II. MEDICAL EXPERT'S REPORT

### A. Standard of Review

"Generally, an appellate court reviews a trial judge's decision on a motion to dismiss a claim under section 74.351 of the Texas Civil Practice and Remedies Code for an abuse of discretion." *Baylor Med. Ctr. at Waxahachie v. Wallace*, 278 S.W.3d 552, 555 (Tex. App.—Dallas 2009, no pet.). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles." *Id.* "When reviewing matters committed to the trial court's discretion, an appellate court may not substitute its judgment for that of the trial court." *Cayton v. Moore*, 224 S.W.3d 440, 444 (Tex. App.—Dallas 2007, no pet.). "A trial court has no discretion when determining what the law is or in applying the law to the facts. A clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Wallace*, 278 S.W.3d at 555–56 (internal citations omitted).

### B. Standard of Care and Breach

#### 1. Applicable Law

"A valid expert report has three elements: it must fairly summarize the applicable standard of care; it must explain how a physician or health care provider failed to meet that

standard; and it must establish the causal relationship between the failure and the harm alleged." *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013) (citing TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6) (West 2011)). "A report need not marshal all the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute." *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001) (decided under section 13.01 of the predecessor statute, the Medical Liability and Insurance Improvement Act, previously codified at article 4590i of the Texas Revised Civil Statutes); *see Loaisiga v. Cerda*, 379 S.W.3d 248, 257–58 (Tex. 2012) (applying *Palacios*'s expert report analysis to the TMLA). "The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id.* at 879. "In determining a report's sufficiency, the court may not look beyond the report itself because all information relevant to the inquiry should be contained [within] the document's four corners." *Christian Care Ctrs., Inc. v. Golenko*, 328 S.W.3d 637, 641 (Tex. App.—Dallas 2010, pet. denied) (citing *Palacios*, 46 S.W.3d at 878).

"The report serves two functions. 'First, the report must inform the defendant of the specific conduct the plaintiff has called into question. Second, and equally important, the report must provide a basis for the trial court to conclude that the claims have merit.'" *Potts*, 392 S.W.3d at 630 (quoting *Palacios*, 46 S.W.3d at 879). "A report need not cover every alleged liability theory to make the defendant aware of the conduct that is at issue." *Id.* "The expert report requirement is a threshold mechanism to dispose of claims lacking merit," and "[i]f a health care liability claim contains at least one viable liability theory, as evidenced by an expert report meeting the statutory requirements, the claim cannot be frivolous." *Id.* at 631.

"When, as here, a plaintiff sues more than one defendant, the expert report must set forth the standard of care for each defendant. If the standard of care is the same for each defendant,

then the report must state so." *Tenet Hosps. Ltd. v. Love*, 347 S.W.3d 743, 753 (Tex. App.—El Paso 2011, no pet.) (internal citations omitted). "While a 'fair summary' is something less than a full statement of the applicable standard of care and how it was breached, even a fair summary must set out what care was expected, but not given." *Palacios*, 46 S.W.3d at 880. "In other words, one must be able to determine from the report what the standard of care required to be done. This requires 'specific information about what the defendant should have done differently.'" *Russ v. Titus Hosp. Dist.*, 128 S.W.3d 332, 342 (Tex. App.—Texarkana 2004, pet. denied) (quoting *id.*).

## 2. Application of Law to Facts

As to issue one, where Nexion claims the expert report "does not identify the standard of care applicable to Nexion or the actions that Nexion should have taken," Nexion contends Dr. Rushing's reference to "Defendants," apparently meaning both Nexion and Reliant, renders his expert report deficient. Specifically, Nexion argues Dr. Rushing's "collective referral to Nexion and Reliant prevents the report from (A) adequately stating the standard of care as applied to Nexion and (B) identifying Nexion's allegedly negligent actions in violation of that standard." Treybig responds that the report "does not need to identify separate standards of care when one standard applies to both [Nexion and Reliant] through [Treybig's] vicarious liability and direct liability claims." Treybig contends Dr. Rushing's report provides "a fair summarization of the standard of care" and "makes Nexion 'aware of the conduct that is at issue.'"

Treybig's health care liability claim arises out of the care received by Mr. Treybig while he was a resident at Pleasant Valley, particularly, the physical therapy and other related care that allegedly resulted in Mr. Treybig's back fracture. Dr. Rushing identifies the standard of care applicable to Nexion as follows:

> "In order to meet the standard of care, the facility must provide a safe environment for its patients. This standard encompasses a range of duties relating

–5–

to the patient's stay with the nursing home, which the facility owes to the patient, such as securing qualified personnel to administer the services provided, adequately supervising any therapy sessions, providing proper equipment and facilities for all treatments necessary to meet the patient's needs, and following up with the patient to verify the success of all procedures and treatments. . . . The standard of care is not met when a nursing home fails to properly investigate, treat and document the patient's pain complaints over the course of time. The most obvious and egregious instance of Defendant's failure to investigate and treat the patient's back pain was during the therapy session when the therapists ignored Mr. Treybig's cries of pain and requests to stop the session, continuing to push and pull using their combined bodyweight. . . . Reasonable investigation, documentation and treatment would have signified the danger in forceful hamstring stretches on a double below the knee amputee, and prevented fracture.

Dr. Rushing sets forth what care was expected from Nexion and how Nexion failed to provide it. The quoted statements provide a "fair summary" of the standard of care applicable to Nexion. *See Palacios*, ("[A] fair summary must set out what care was expected, but not given."); *Columbia N. Hills Hosp. Subsidiary, L.P. v. Bowen*, No. 02-13-00286-CV, 2014 WL 345658, at *4–5 (Tex. App.—Fort Worth Jan. 30, 2014, pet. denied) (mem. op.) (concluding an expert report that stated various duties owed by a hospital and detailed how the hospital failed to properly perform those duties "fairly summarized the applicable standard of care for Hospital and explained how Hospital failed to meet that standard"); *Russ*, 128 S.W.3d at 342 (concluding that statements in an expert report that a hospital "deviated from the standard of care," which required the hospital to lock windows or secure them with metal screens, by "placing patient with potential suicidal ideation and recent suicidal behavior in a fourth floor room with unlocked windows" constituted a "specific allegation which provide[d] the Hospital with notice of the conduct complained of by [the plaintiff]").

Although other statements in Dr. Rushing's report describe the duties and failings of "the Defendants," referring to both Nexion and Reliant, the particular statements identified above, which are contained within the four corners of the report, are specific to Nexion and are sufficient to inform Nexion of its conduct that Treybig calls into question. *See Presbyterian*

–6–

*Cmty. Hosp. of Denton v. Smith*, 314 S.W.3d 508, 514 (Tex. App.—Fort Worth 2010, no pet.) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (defining "expert report")) (rejecting a hospital's argument that "several individual statements in [the expert's] report [were] insufficient" because the "report, as a whole, provide[d] a 'fair summary' of [the expert's] opinions"). It is clear from his report that in Dr. Rushing's opinion, Nexion's compliance with the standard of care, by conducting "[r]easonable investigation, documentation and treatment" of Mr. Treybig's pain complaints, "would have signified the danger in forceful hamstring stretches on a double below the knee amputee, and prevented fracture." *Cf. Texarkana Nursing & Healthcare Ctr., LLC v. Lyle*, 388 S.W.3d 314, 320 (Tex. App.—Texarkana 2012, no pet.) (concluding an expert report, which indicated that a nursing home breached the standard of care by "allowing the documented assault of [the patient] by one of its own employees," did not sufficiently articulate the standard of care and breach because the report did not "advise [the nursing home] of what should have been done in order to prevent its employee from assaulting [the patient]"). We conclude the substance of Dr. Rushing's report "gives fair notice" to Nexion of its negligent conduct on which Treybig relies and "provides a sufficient basis for the trial court to conclude that the claims have merit." *See Russ*, 128 S.W.3d at 342. The trial court did not abuse its discretion in denying the motion to dismiss on grounds that the report failed to summarize the standard of care and explain how Nexion breached that standard. *See Bowen*, 2014 WL 345658, at *5; *id.* Accordingly, we decide Nexion's first issue against it.

### *C. Causation*

In issue two, Nexion contends Dr. Rushing's report "fails to adequately address causation for the same reason that it fails to address Nexion's standard of care—the report's collective description of the events and defendants prevents it from adequately addressing Nexion's conduct." Treybig responds that the report "properly sets forth Dr. Rushing's opinions on

causation as to Nexion" because "both Reliant and Nexion owed Mr. Treybig the same duty to properly supervise," and the report is "a good faith effort to articulate the causal relationship between Nexion's failure to supervise and the harm to Mr. Treybig." As discussed above, Dr. Rushing's report does adequately identify Nexion's allegedly negligent conduct, despite "the report's collective description of the events and defendants." *See Fortner v. Hosp. of the Sw., LLP*, 399 S.W.3d 373, 383–84 (Tex. App.—Dallas 2013, no pet.) (concluding expert reports "represent[ed] a good faith effort to provide a fair summary of the experts' opinions about . . . the causal relationship between the failure and the claimed injury" because the reports "identif[ied] each physician and health care provider against which direct liability claims [were] asserted, including [the appellant, a hospital], and discuss[ed] how the provider breached the applicable standard of care and caused or contributed to causation of [the patient's] injury"); *Christus Spohn Health Sys. Corp. v. Sanchez*, 299 S.W.3d 868, 877–78 (Tex. App.—Corpus Christi 2009, pet. denied) (concluding expert reports "sufficiently linked [the patient's] assault to [the hospital's] failure to protect her from the assaultive conduct of [its employees]" when the reports stated the hospital "had duty to provide a safe recovery environment," described the alleged conduct of the employees, and concluded "[t]he fact that [the patient] was vulnerable, unable to protect herself, and felt as if her person was violated has caused her to now have symptoms of Major Depression and Post Traumatic Stress Disorder"). So, for the same reasons discussed above, we decide Nexion's second issue against it.

### D. Medical Expert's Qualifications

In issue three, Nexion contends Dr. Rushing is not a "qualified expert" because his report and curriculum vitae (1) "do not show that he is actively practicing in nursing home health care" and (2) do not "demonstrate that he has knowledge of the standard of care for nurses or physical therapists working in nursing homes like Nexion."

–8–

## 1. Applicable Law

For purposes of the expert report, "a person giving opinion testimony regarding whether a health care provider departed from accepted standards of health care" must be qualified to testify. TEX. CIV. PRAC. & REM. CODE § 74.351(r)(5)(B). Section 74.402(b) provides that a person is qualified to testify only if the person:

> (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;
>
> (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
>
> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

*Id.* § 74.402(b).

"Section 74.402(b) makes it clear that different standards of care apply to physicians and health care providers." *Wallace*, 278 S.W.3d at 558 (citing *Simonson v. Keppard*, 225 S.W.3d 868, 872 (Tex. App.—Dallas 2007, no pet.)).

> When a physician fails to state in his expert report or affidavit that he has knowledge of the standard of care applicable to the specific types of health care providers involved in the claim, or that he has ever worked with or supervised the specific types of health care providers involved in the claim, the physician is not qualified on the issue of whether the health care provider departed from the accepted standards of care for health care providers.

*Id.* "'[E]xpert qualifications should not be too narrowly drawn.'" *Golenko*, 328 S.W.3d at 643 (quoting *Larson v. Downing*, 197 S.W.3d 303, 305 (Tex. 2006) (per curiam)). "Rather, the trial court should determine whether the proffered expert has 'knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject.'" *Id.* (quoting *Broders v. Heise*, 924 S.W.2d 148, 153–54 (Tex. 1996)). "The focus is on whether the expert's expertise goes to the very matter on which

–9–

he is to give an opinion." *Id.* "Therefore, a medical expert from one specialty may be qualified to testify if he has practical knowledge of what is customarily done by practitioners of a different specialty under circumstances similar to those at issue in the case." *Tenet Hosps. Ltd. v. Love*, 347 S.W.3d 743, 750 (Tex. App.—El Paso 2011, no pet.); *see also Broders*, 924 S.W.2d at 153 ("Our holding does not mean that only a neurosurgeon can testify about the cause in fact of death from an injury to the brain, or even that an emergency room physician could never so testify. What is required is that the offering party establish that the expert has 'knowledge, skill, experience, training, or education' regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject."). However, "it is not enough to summarily state such 'knowledge' when the reports and curricula vitae fail to demonstrate how the experts gained the requisite experience or training," and "the proffered medical expert's expertise must be evident from the four corners of his report and curriculum vitae." *Id.*

### 2. Application of Law to Facts

As to its third issue, Nexion's first contention is that Dr. Rushing is not qualified to render an opinion on the applicable standard of care because "he is not actively practicing health care in a nursing home." Treybig responds that "Dr. Rushing need not be employed at a nursing home to offer opinions on a fracture to the spine of an elderly patient."

The "essential claim" in this case involves the standard of care that should be applied in a nursing home when it contracts with another healthcare provider to provide a resident with physical therapy and other care on the premises of the nursing home. *See Golenko*, 328 S.W.3d at 644 (concluding that the "essential claim" against a nursing home involved the assessment and care of individuals with Alzheimer's disease, so a doctor, who was board certified in geriatrics and internal medicine, had treated patients with similar conditions, was involved in the assessment of those patients, and had supervised nurses in the care and assessment of those

–10–

patients, was qualified to testify to the applicable standard of care, despite his lack of "nursing home experience"). So, the relevant question is not the narrow issue of whether Dr. Rushing has worked in a nursing home. Rather, it is the broader issue of whether Dr. Rushing is knowledgeable about the standard of care applicable to the treatment of patients like Mr. Treybig and the relevant care provided by Nexion. *See id*; *IHS Acquisition No. 140, Inc. v. Travis*, No. 13-07-481-CV, 2008 WL 1822780, at *5 (Tex. App.—Corpus Christi Apr. 24, 2008, pet. denied) (mem. op.) (concluding a doctor, who was board certified in geriatrics and "knowledgeable about the types of people who reside in nursing homes, their afflictions, and most importantly, the relevant treatment and standard of care for such patients," was qualified to testify to the standard of care applicable in a claim against a nursing home for failure to monitor a resident's eye injury). Accordingly, we disagree with Nexion to the extent that it argues Dr. Rushing is not qualified merely because he does not work in a nursing home. *Golenko*, 328 S.W.3d at 644; *IHS Acquisition*, 2008 WL 1822780, at *4 ("The statute, reasonably construed, does not require that the expert be involved in the exact same field as the health-care-provider defendant.") (citing *Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003)).

Second, Nexion contends Dr. Rushing is not qualified because "[n]either Dr. Rushing's report nor his [curriculum vitae] demonstrate that he has knowledge of the standard of care for nurses or physical therapists working in nursing homes like Nexion." In response, Treybig argues that Dr. Rushing has "ample experience treating patients with spinal injuries, including writing orders to treat and care for spinal injuries and supervising the execution of the orders."

According to the record, Dr. Rushing is licensed to practice medicine in Texas and is board certified in internal medicine, rheumatology, and geriatrics. He is actively engaged in the practice of these three specialties and is an attending physician at Presbyterian Hospital of

Dallas, Texas. In his expert report, Dr. Rushing more specifically identifies his qualifications regarding this case as follows:

> In the regular course of my medical practice I have occasion to diagnose and treat patients with conditions similar to or identical with Mr. Treybig. [D]uring the course of my career I have provided primary medical care to more than 10,000 patients in hospitals, nursing homes and assisted living facilities. I have provided care to patients who, like Mr. Treybig, were suffering from diabetes, hip replacement therapy, complications from infections, amputations, and spinal injuries. I have written orders for the care and treatment of these patients and have supervised the execution of these orders by RNs LVN's and CNA's who were assigned to provide the hands-on care to my patients. These orders included orders for the treatment for hip pain as well as the treatment of spinal injuries. I am therefore intimately familiar with the standards of care for the facilities involved in this claim as well as the RNs, LVN's and CNA's who provid[ed] care to Mr. Treybig.

While Dr. Rushing states that he is "intimately familiar with the standards of care for the facilities involved as well as the RNs, LVN's and CNA's who provid[ed] care to Mr. Treybig," he does not state that he is familiar with the standards of care that would be applicable to Nexion's supervision of Reliant's physical therapists who provided the relevant care or treatment to Mr. Treybig at Pleasant Valley, nor does his report and curriculum vitae identify any experience supervising, managing, or overseeing physical therapists or physical therapy treatment. *Compare Golenko*, 328 S.W.3d at 644 (concluding a doctor was qualified to testify to the standard of care applicable to the assessment of a patient with Alzheimer's disease for admission to a nursing home when the doctor was certified in geriatrics and internal medicine, treated patients with Alzheimer's disease, and supervised nurses in the care and assessment of those patients), *with Simonson*, 225 S.W.3d at 872–73 (holding an expert report inadequate because the expert, a doctor, did not "state that he either ha[d] knowledge of the standard of care applicable to nurse practitioners or that he ha[d] ever worked with or supervised nurse practitioners"). Further, Dr. Rushing's report and curriculum vitae "fail to demonstrate how [he] gained the requisite experience or training" to offer an opinion on the standard of care applicable

–12–

in a nursing home when it contracts with another healthcare provider to provide a resident with physical therapy care on the premises of the nursing home. *See Love*, 347 S.W.3d at 750 ("[I]t is not enough to summarily state [the expert's] 'knowledge' when the reports and curricula vitae fail to demonstrate how the experts gained the requisite experience or training."). The statement that Dr. Rushing has "provided primary medical care" to patients in nursing homes with "conditions similar or identical with Mr. Treybig" does not adequately establish how Dr. Rushing is "intimately familiar" with the standard of care owed by a nursing home under these circumstances. *See id.*; *Simonson*, 225 S.W.3d at 872–73 ("Section 74.402(b)(2) requires that the expert have knowledge of *the accepted standard of care for health care providers, i.e. nurse practitioners, for the diagnosis* involved in the claim." (emphasis in original)). Because the four corners of Dr. Rushing's report and curriculum vitae do not adequately articulate how Dr. Rushing is qualified to opine on the standard of care applicable to a nursing home when it contracts with another healthcare provider to provide a resident with physical therapy care or treatment, we conclude the trial court abused its discretion in denying the motion to dismiss on this basis. We decide in favor of Nexion on its third issue. *See Love*, 347 S.W.3d at 750–51.

*E. Thirty-day Extension to Cure Deficiencies*

In its fourth issue, Nexion contends the trial court abused its discretion when it denied Nexion's motion to dismiss and failed to award Nexion its attorney's fees and costs. Treybig responds that if Dr. Rushing's report is "inadequate, the case should be remanded to receive a 30-day extension to cure the deficiencies." In response, Nexion argues Treybig is not entitled to "a chance to get a thirty-day extension" because Dr. Rushing's report "did not implicate Nexion's conduct," and Dr. Rushing "was not qualified to offer the report."

## 1. Applicable Law

When an expert report is timely served and properly challenged, the trial court "shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l); *Potts*, 392 S.W.3d at 630. The TMLA "also authorizes the trial court to give a plaintiff who meets the 120-day deadline an additional thirty days in which to cure a 'deficiency' in the elements of the report." *Scoresby v. Santillan*, 346 S.W.3d 546, 549 (Tex. 2011) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c)). "The trial court should err on the side of granting the additional time and must grant it if the deficiencies are curable." *Id.* (internal citations omitted). "The purpose of the expert report requirement is to deter frivolous claims, not to dispose of claims regardless of their merits." *Leland v. Brandal*, 257 S.W.3d 204, 554 (Tex. 2008) (citing *Palacios*, 46 S.W.3d at 878). "A court may not provide opportunities to cure, however, when an expert report is 'absent' as opposed to deficient," such as when a report "fails to address all required elements of a claim." *Hollingsworth v. Springs*, 353 S.W.3d 506, 524 (Tex. App.—Dallas 2011, no pet.) (denying a health care liability claimant an opportunity to cure when the expert report "omitted any discussion of the element of causation," so the "report could not qualify as a good faith effort to meet Chapter 74's requirements").

"[A] thirty-day extension to cure deficiencies in an expert report may be granted if the report is served by the statutory deadline, if it contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated." *Scoresby*, 346 S.W.3d at 557. The Supreme Court has "recognize[d] that this is a minimal standard." *Id.* "An individual's lack of relevant qualifications and an opinion's inadequacies are deficiencies the plaintiff should be given an opportunity to cure if it is possible to do so." *Id.* at 549. When a

court of appeals finds an expert report to be deficient after the trial court concluded it was adequate, the court of appeals "has the discretion to remand the case for consideration of a thirty-day extension to cure the deficiency." *Leland*, 257 S.W.3d at 208.

## 2. Application of Law to Facts

We now address whether Dr. Rushing's report meets the standard identified in *Scoresby*, indicating that the trial court may grant Treybig an opportunity to cure the deficiencies. *See Scoresby*, 346 S.W.3d at 557. Dr. Rushing's report was served by the statutory deadline, and it "implicates" Nexion's conduct, stating "[r]easonable investigation, documentation and treatment [of Mr. Treybig's pain complaints] would have . . . prevented fracture" and "the events and failures set forth in [the] report proximately caused Mr. Treybig's injuries." *See id.* While we have concluded that Dr. Rushing's report and curriculum vitae did not adequately articulate how Dr. Rushing is qualified to opine on the applicable standard of care in this case, it does not necessarily follow that Dr. Rushing is not "an individual with expertise," such that the report was "'absent' as opposed to deficient." *See Hollingsworth*, 353 S.W.3d at 524. Dr. Rushing's expertise, as a licensed medical doctor, who is board certified in internal medicine, rheumatology, and geriatrics, "is relevant in explaining the connection between" the physical therapists' alleged use of "excessive force" and the back fracture Mr. Treybig suffered. *See Scoresby*, 346 S.W.3d at 557 ("The Act requires that [the expert's] knowledge, training or experience, and practice be 'relevant' to [the plaintiff's] claim."). We agree with Treybig's contention that this case should be remanded to the trial court for consideration of a thirty-day extension to cure the deficiencies. *See Leland*, 257 S.W.3d at 208. Accordingly, we decide against Nexion on its fourth issue.

–15–

## III. CONCLUSION

The trial court abused its discretion in denying the motion to dismiss because Dr. Rushing's expert report and curriculum vitae do not adequately articulate how Dr. Rushing is qualified to opine on the standard of care applicable in a nursing home when it contracts with another healthcare provider to provide a resident with physical therapy care on the premises of the nursing home. Accordingly, we reverse the trial court's order denying the motion to dismiss and remand the cause to the trial court to consider whether to grant Treybig a thirty-day extension to cure the deficiencies in Dr. Rushing's report.

/Douglas S. Lang/
_____

140498F.P05

DOUGLAS S. LANG
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

NEXION HEALTH AT GARLAND, INC.
D/B/A PLEASANT VALLEY
HEALTHCARE AND REHABILITATION
CENTER, Appellant

No. 05-14-00498-CV        V.

TEMPERANCE TREYBIG, Appellee

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. dc-13-12286.
Opinion delivered by Justice Lang. Justices
Bridges and Evans participating.

        In accordance with this Court's opinion of this date, the judgment of the trial court is
**REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent
with this opinion.

        It is **ORDERED** that appellant NEXION HEALTH AT GARLAND, INC. D/B/A
PLEASANT VALLEY HEALTHCARE AND REHABILITATION CENTER recover its costs
of this appeal from appellee TEMPERANCE TREYBIG.

Judgment entered this 31st day of December, 2014.