

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-23-00392-CV

MENDI RAMSAY AND ROCHELLE ALVARADO, APPELLANTS

V.

HOLLY FERGUSON, INDIVIDUALLY, AND AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF CYNTHIA PIERCE, DECEASED, APPELLEE

On Appeal from the 53rd District Court
Travis County, Texas[1]
Trial Court No. D-1-GN-23-000736, Honorable Maria Cantú Hexsel, Presiding

February 23, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellants, Mendi Ramsay and Rochelle Alvarado, appeal the trial court's denial

of their motion to dismiss this health care liability lawsuit filed against them by Holly

---

[1] Originally appealed to the Third Court of Appeals, this appeal was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between precedent of the Third Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

Ferguson, individually and as personal representative of the Estate of Cynthia Pierce. We affirm the trial court's order.

## BACKGROUND[2]

Ferguson's 73-year-old mother, Cynthia Pierce, was a resident at Harvest Renaissance Austin, an assisted living facility. In February of 2021, during Winter Storm Uri, the facility lost power and did not have sufficient heat. On the morning of February 17, Pierce was in her room, showing signs of illness and disorientation. Her bedding was soiled. Staff members washed Pierce and returned her to her bed, but the window in her room was left open. That afternoon, Pierce was found disoriented and cold. Emergency responders arrived and recorded her temperature at 94.2 degrees. They transported Pierce to a hospital, where she died of hypothermia that same day.

Ferguson filed this lawsuit against Harvest Renaissance; its executive director, Ramsay; and its wellness director, Alvarado, a licensed vocational nurse.[3] Ferguson asserted, among other things, that Harvest Renaissance, Ramsay, and Alvarado failed to provide a safe environment for Pierce, failed to appropriately monitor Pierce's condition, failed to properly equip the facility with emergency power, and failed to take reasonable measures to prevent Pierce from developing hypothermia.

As required by Chapter 74 of the Civil Practice and Remedies Code, Ferguson filed expert reports to support her health care liability claims. Licensed nursing home

---

[2] Given the procedural posture of this case, we draw background facts from the allegations in Ferguson's pleadings.

[3] Harvest Renaissance is not a party to this appeal.

administrators Gregory D. Bearce and William H. James, Jr., provided reports addressing the applicable standard of care and the breach thereof, and forensic pathologist Paul S. Uribe, M.D., provided a report addressing Pierce's cause of death. Appellants filed a motion to dismiss in which they argued that Ferguson's experts were not qualified to address standard of care and breach because they are not medical care providers who treat patients. The trial court denied Appellants' motion, and Appellants brought this interlocutory appeal.

## ANALYSIS

Under the Texas Medical Liability Act (TMLA), a health care liability claim may not proceed until the plaintiff has made a good-faith effort to demonstrate that a qualified medical expert believes that a defendant's conduct breached the applicable standard of care and caused the alleged injury. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l), (r)(6). A claimant may satisfy the expert report requirement by "serving reports of separate experts . . . regarding different issues arising from the conduct of a physician or health care provider, such as issues of liability and causation." *Id.* § 74.351(i); *Mitchell v. Satyu*, No. 05-14-00479-CV, 2015 Tex. App. LEXIS 6127, at *12 n.3 (Tex. App.—Dallas June 17, 2015, no pet.) (mem. op.) (noting "expert report requirement may be satisfied by utilizing more than one expert report" and that "a court may read the reports together").

The purpose of an expert report under the TMLA is to inform the defendant of the specific conduct the plaintiff has called into question and to provide the trial court with a basis to determine whether the plaintiff's claims have merit. *Patel v. Williams*, 237 S.W.3d 901, 906 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The expert report requirement

3

is intended to "weed out frivolous malpractice claims in the early stages of litigation, not to dispose of potentially meritorious claims." *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex 2018) (per curiam). If a claimant fails to file an adequate expert report as required by the TMLA, the trial court must dismiss the suit with prejudice and award reasonable attorney's fees and costs to the affected defendant. *E.D. ex rel. B.O. v. Tex. Health Care, P.L.L.C.*, 644 S.W.3d 660, 664 (Tex. 2022) (per curiam). We review a trial court's ruling on a motion to dismiss under section 74.351 for an abuse of discretion. *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001).

Issue 1: Expert Qualifications

In their first issue, Appellants assert that the trial court abused its discretion in denying their motion to dismiss because Ferguson's proffered experts are not qualified to opine on the applicable health care standards or on Appellants' alleged breach of those standards. Appellants do not challenge the adequacy of the expert reports in addressing the applicable standards of care, breach, or causation.

Under the TMLA, with respect to a person opining as to whether a health care provider departed from accepted standards of health care, an expert is someone who is "qualified to testify under the requirements of Section 74.402" of the Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(B). Section 74.402, in turn, provides that a person may qualify as an expert if the person (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant is an individual, at the

4

time the testimony is given or was practicing that type of health care at the time the claim arose; (2) has knowledge of accepted standards of care for the diagnosis, care, or treatment of the injury; and (3) is qualified on the basis of training or experience. *Id.* at § 74.402(b). In determining whether an expert is qualified on the basis of training or experience, the trial court considers whether the witness (1) is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and (2) is actively practicing health care in rendering health care services relevant to the claim. *Id.* § 74.402(c). A person offering an expert report must establish that he has expertise regarding "the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *In re Windisch*, 138 S.W.3d 507, 512 (Tex. App.—Amarillo 2004, orig. proceeding) (per curiam) (citing *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996)). The analysis is focused on "the very matter" on which the expert is to give an opinion. *Broders*, 924 S.W.2d at 153.

Appellants claim that two of Ferguson's experts, Bearce and James, are "unqualified as a matter of law" because they are "businessmen, not licensed health care professionals," and that they have no training in the diagnosis, care, or treatment of the physical infirmity that caused Pierce's illness and death. However, the statutory definition of "health care provider" includes a director, manager, or employee of a health care institution and "health care" includes any act performed by a health care provider if it relates to a patient's medical care, treatment, or confinement. TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(A)(vii), (B); (a)(10). Therefore, licensed nursing home

administrators may qualify as experts under the statute.[4]  S*ee, e.g., Hollingsworth v. Springs*, 353 S.W.3d 506, 516–18 (Tex. App.—Dallas 2011, no pet.) (health care administration consultant qualified by training and experience as hospital administrator to offer expert opinions on accepted standards of care for health care providers providing administrative services).  Moreover, Ferguson's claims against Appellants do not arise from the diagnosis, care, or treatment of Pierce's hypothermia.  Rather, her claims allege that the assisted living facility and its staff failed to provide Pierce with a safe physical environment and that this failure led to Pierce suffering from hypothermia.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13) (including departures from accepted standards of administrative services within definition of "health care liability claim").  Therefore, an expert providing an expert report in this case must demonstrate expertise in the standard of care applicable to an assisted living facility in maintaining a safe physical environment for its residents.  *See, e.g., Christian Care Ctrs., Inc. v. Golenko*, 328 S.W.3d 637, 645–46 (Tex. App.—Dallas 2010, pet. denied) (in suit against nursing home in which resident with Alzheimer's disease grabbed another resident's walker, causing resident to fall, hit her head, and die, court concluded that licensed nursing home administrator was qualified to opine on standard of care applicable to nursing home in admitting and assessing resident with Alzheimer's disease).

---

[4] Appellants assert that Bearce and James specifically cannot opine on the standards of care applicable to Alvarado, because she is a licensed vocational nurse.  However, the qualification inquiry does not focus on the specialty of the medical expert, but instead on "whether the proffered expert has 'knowledge, skill, experience, training or education' regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject."  *Tenet Hosps. Ltd. v. Love*, 347 S.W.3d 748, 750 (Tex. App.—El Paso 2011, no pet.).

6

Bearce is a licensed nursing home administrator. He has been licensed to provide administrative oversight in such facilities for more than 35 years. Bearce is currently the executive director of a continuing care retirement community providing residential living services, including assisted living, memory support, and skilled nursing services. He has provided administrative oversight for several skilled nursing facilities and assisted living and memory support programs. Bearce is on the faculty of the Davis School of Gerontology at the University of Southern California, Los Angeles, and has taught graduate-level classes in aging services management.

James is a licensed nursing home administrator with a 30-year career overseeing the operations of assisted living, skilled nursing, and memory support communities. He served as the chief executive officer of a 350-resident continuing care/life plan retirement community for nine years and as chief executive officer of a 400-resident continuing care retirement community for twelve years. Before that, he worked as executive director or director at three different communities providing aging care services. His curriculum vitae reflects experience with staffing, facilities development, and emergency preparedness planning.

As shown in their reports, both Bearce and James have experience and expertise with policies and procedures for the provision of care to residents of assisted living facilities. Bearce and James qualify as experts under section 74.402 because they are practicing health care providers with the requisite licensing, education, and experience in

7

administration necessary to fulfill the requirements of the statute.[5]  *See Hollingsworth*, 353 S.W.3d at 516–18.

As to Dr. Uribe, Appellants allege that he has "never practiced health care in any field that treats seniors like Ms. Pierce" and he lacks the qualifications to opine on the standards for her health care.  They claim that "[w]hile Dr. Uribe may be qualified to opine on Ms. Pierce's cause of death, he is not qualified to opine on the standards for her health care, and thus, his opinions do not satisfy the TMLA."  However, given that Bearce and James are qualified to speak to the applicable standards of care in this case, it is not necessary for this Court to determine whether Dr. Uribe is also qualified to opine on those matters.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(i) (TMLA allows plaintiff to use multiple expert reports to satisfy any of Act's requirements).

Dr. Uribe's report asserts he is providing an expert report "on Ms. Pierce's cause of death."  *See id.* §§ 74.351(r)(5)(C); 74.403(a) (only a physician is qualified to render expert report opinion as to causation).  He opines that Pierce's cause of death was hypothermia, as stated on her death certificate.  Noting the cold temperatures and lack of power at Harvest Renaissance, Dr. Uribe concludes that the conditions at the facility "could and did cause Ms. Pierce's death through hypothermia."  Dr. Uribe's report shows that he is a medical doctor and actively practicing forensic pathologist.  He is board-certified in anatomic, clinical, and forensic pathology by the American Board of Pathology.  Dr. Uribe is licensed to practice medicine in multiple states and has years of experience

---

[5] Although James is now retired, his report and curriculum vitae reflect that he was practicing hospital administration at the time this claim arose.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b)(1).

as a medical examiner conducting post-mortem examinations. He has also served as the director of the office of the Armed Forces Medical Examiner and as the chief of the Department of Pathology at Martin Army Community Hospital.

Considering Dr. Uribe's years of training in forensic pathology, his experience as a medical examiner, and the more than 1500 autopsies he has performed, we cannot conclude that the trial court abused its discretion by determining that Dr. Uribe is qualified to render an opinion that Pierce's death was caused by hypothermia resulting from the conditions at Harvest Renaissance. *See Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 144 (Tex. 2015) (in exercising discretion, trial court must review report, sort its contents, resolve any inconsistencies, and decide whether report demonstrates good faith effort to show plaintiff's claims have merit).

For the foregoing reasons, the trial court did not abuse its discretion by denying Appellants' motion to dismiss for failure to comply with the expert report requirements of Chapter 74.

Issue 2: Costs and Attorney's Fees

Appellants' second issue concerns the trial court's refusal to award Appellants their reasonable costs and attorney's fees. Because we conclude that Appellants are not entitled to dismissal, they are not entitled to costs and attorney's fees under Chapter 74, and we need not address this issue. *See* TEX. R. APP. P. 47.1.

9

**CONCLUSION**

Having concluded that the trial court did not abuse its discretion in denying Appellants' motion to dismiss, we affirm the trial court's order.


Judy C. Parker
Justice