# NO. 12-18-00137-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BENNIE GRISMORE,*<br>*APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *TEXAS SPINE & JOINT HOSPITAL,*<br>*LTD., PAC,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

Bennie Grismore appeals the trial court's order granting a motion to dismiss filed by Texas Spine and Joint Hospital, Ltd., PAC (TSJH). He presents three issues on appeal. We reverse and remand.

## BACKGROUND

Grismore sustained a foot injury in 2007. This injury resulted in a complex regional pain syndrome. When the pain syndrome could not be controlled by other therapies, Grismore underwent surgery at East Texas Medical Center (ETMC) to have a Medtronic Restore Ultra 37712 spinal cord stimulator implanted in March 2008. The leads on the stimulator were replaced in June 2008 at ETMC. Grismore's medical records reflect that Grismore complained of swelling and discomfort when he used the stimulator. He also noted that the stimulator overheated when it was recharged and that, as a result, Grismore did not use the device regularly.

In February 2015, Grismore underwent surgery at TSJH at which time the Medtronic stimulator's battery was replaced with a RestoreSENSOR SureScan MRI 97114 battery. Following this replacement, Grismore complained of pain, spasms, and shocks. He further reported several elevated blood pressure readings. Grismore indicated to his home health practitioner that he was unable to drive a vehicle and was homebound due to the pain, weakness,

and numbness to his extremities. The Medtronic Restore Ultra 37712 spinal cord stimulator was recalled in September 2013 and was followed by a recall of the RestoreSENSOR SureScan MRI 97114 battery in November 2014. In August 2016, Grismore underwent another surgery where the Medtronic Restore Ultra 37712 spinal cord stimulator and RestoreSENSOR SureScan MRI 97114 battery were replaced with a Nevro stimulator and battery.

In March 2017, Grismore brought healthcare liability claims against Medtronic, Inc., ETMC, and TSJH.[1] He alleges that TSJH was negligent by stocking the recalled Medtronic RestoreSENSOR SureScan MRI 97114 battery after it was recalled in November 2014 and by allowing it to be implanted during the 2015 surgery.

In compliance with Section 74.351 of the Texas Civil Practice and Remedies Code, Grismore served TSJH with an expert report and curriculum vitae of Dr. Terrence Shaneyfelt. TSJH filed objections to Dr. Shaneyfelt's report, including objections that he was unqualified to address the standard of care applicable to TSJH and failed to adequately address breach and causation. The trial court sustained TSJH's objections but allowed Dr. Shaneyfelt's report to be supplemented in accordance with Section 74.351(c) to cure the deficiencies. The trial court notified the parties of its ruling via e-mail, but the order sent to Grismore was delivered to an e-mail address other than the one Grismore's attorney designated in the e-file system. Grismore failed to supplement Dr. Shaneyfelt's expert report within the statute's thirty-day time period to cure any deficiencies.

When TSJH filed an amended motion to dismiss because the report was not timely supplemented, Grismore's attorney claimed he first learned of the trial court's ruling and Dr. Shaneyfelt's report was supplemented within the following thirty days. After the filing of Grismore's response to TSJH's amended motion to dismiss, the trial court granted TSJH's amended motion to dismiss and severed the dismissal of TSJH from the remainder of the case. This appeal followed.

---

[1] Medtronic and ETMC are not parties to this appeal.

In his second issue, Grismore contends Dr. Shaneyfelt is qualified to render an opinion with regard to TSJH's standard of care, breach, and causation. In his third issue, Grismore alleges that Dr. Shaneyfelt's report adequately addresses standard of care, breach, and causation.[2]

**Standard of Review**

A trial court's ruling on qualifications of a medical expert and the sufficiency of an expert's report under Chapter 74 is reviewed for an abuse of discretion. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). A trial court abuses its discretion if it acts without reference to guiding rules or principles. *Van Ness*, 461 S.W.3d at 142. However, in exercising its discretion, it is incumbent upon the trial court to review the report, sort out its content, resolve any inconsistencies, and decide whether the report demonstrated a good faith effort to show that the plaintiff's claims have merit. *See id.* at 144. When reviewing factual matters committed to the trial court's discretion, an appellate court may not substitute its judgment for that of the trial court. *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

When the plaintiff timely serves an expert report, and the defendant timely files a motion to dismiss to challenge the adequacy of the report, the trial court may take one of three actions. *Mangin v. Wendt*, 480 S.W.3d 701, 705 (Tex. App.—Houston [1st Dist.] 2015, no pet.). First, if the trial court concludes that the report is adequate, it must deny the motion. *Id.* Second, if the trial court concludes that the report does not constitute an objective good faith effort to comply with the statute, it must grant the motion. *Id.*; *see* TEX. CIV. PRAC. & REM. CODE § 74.351(*l*) (West 2019). Third, if the trial court concludes that the report is an objective good faith effort to comply with the statute but is nevertheless deficient in some way, it may grant the plaintiff one 30-day extension to cure the deficiency and must grant the extension if the deficiency is curable. *Mangin*, 480 S.W.3d at 705–06.

---

[2] In his first issue, Grismore asserts that the trial court erred in failing to consider Dr. Shaneyfelt's amended report. The trial court's order neither states the basis for the dismissal nor definitively indicates that the trial court did not consider the amended report. Furthermore, TSJH agreed during oral argument that this Court should consider the amended report in conducting our analysis. Accordingly, we will consider Dr. Shaneyfelt's amended report in our review and assume the trial court did likewise. Therefore, we decline to address this issue. *See* TEX. R. APP. P. 47.1.

**Expert Report Requirements**

The Texas Medical Liability Act requires a claimant to serve an expert report early in the proceedings on each party against whom a health care liability claim is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). The Texas Supreme Court has explained that "eliciting an expert's opinions early in the litigation [is] an obvious place to start in attempting to reduce frivolous lawsuits." *Palacios*, 46 S.W.3d at 877. The purpose of evaluating expert reports is to deter frivolous claims, not to dispose of claims regardless of their merits. *See Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 631 (Tex. 2013). A valid expert report must fairly summarize the applicable standard of care; explain how a physician or health care provider failed to meet that standard; and establish a causal relationship between the failure and the harm alleged. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); *Potts*, 392 S.W.3d at 630.

**Qualifications**

A physician is qualified to submit an expert report on the causal relationship between a departure from the standard of care and an injury when he would otherwise be qualified to address causation under the Texas Rules of Evidence. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C). A person may qualify as an "expert" on the question of whether the health care provider departed from the accepted standard of care if the person (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider; (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care. *Id*. § 74.402(b) (West 2017). To be qualified on the basis of training or experience, the person must be certified or have other substantial training or experience in an area of health care practice relevant to the claim and must be actively practicing health care in rendering health care services relevant to the claim. *Id*. § 74.402(c). "Practicing health care" includes serving as a consulting health care provider and being licensed, certified, or registered in the same field as the defendant health care provider. *Id.* § 74.402(a).

Not every licensed medical doctor is automatically qualified to testify as an expert on every medical question, and the proponent of that testimony must show that the expert possesses special knowledge regarding the matter on which he proposes to give an opinion. *Ehrlich v. Miles,* 144 S.W.3d 620, 624–26 (Tex. App.—Fort Worth 2004, pet. denied). Accordingly, the offered report

4

must demonstrate that the expert has "'knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject.'" *Id.* (quoting **Roberts v. Williamson**, 111 S.W.3d 113, 121 (Tex. 2003)). The expert report must do more than merely allege that the expert is a medical doctor in order to render opinions about the standard of care and causation, and the reviewing court cannot fill in gaps in a report by drawing inferences. *See, e.g.,* **Collini v. Pustejovsky**, 280 S.W.3d 456, 465–67 (Tex. App.—Fort Worth 2009, no pet.) (trial court erred in denying physician's motion to dismiss because expert report did not demonstrate expert qualified to testify regarding causation).

Grismore urges that Dr. Shaneyfelt is qualified to render opinions regarding hospital procedures and protocols; in particular, a hospital's standard of care related to the stocking and continued possession of surgically implanted medical devices after a device has been recalled by the product's manufacturer. We agree.

The claims against TSJH in this suit are atypical of a traditional healthcare liability claim in which the medical judgment, actions of a healthcare professional, or care provided to a particular patient at a healthcare facility are being questioned. At its core, this case concerns a quality-control claim in which either a protocol or policy was not put in place or not adequately followed to ensure that a recalled medical device would not be surgically implanted into a patient. Certainly, this does not alleviate a plaintiff's requirement to submit a report from a qualified expert that addresses the applicable standard of care and establishes a causal connection between a breach of that standard and the harm alleged. Nevertheless, any physician would know a recalled medical device should not be surgically implanted into a patient and a hospital should have procedures in place to prevent a recalled medical device from being available for surgical implantation by mistake.

Dr. Shaneyfelt's curriculum vitae reflects that he is a medical doctor and board certified in internal medicine. He has been the Chief of General Medicine at the Veterans Affairs Medical Center of Birmingham for the past seventeen years. He further holds a Master of Public Health from Harvard School of Public Health and is a professor of medicine at the University of Alabama School of Medicine. He elaborates in his report:

> As a professor of medicine as well as the hospital medicine physician, I have supervised nurses, residents, fellows and medical students who are working in hospitals. I am familiar with the standard of care of a hospital toward its patients. I am also familiar with the standard of care of the persons that are employed by hospitals including nurses, physicians, and non physicians as well providing medical care, including general surgical procedures and surgical implantation devices in

5

a hospital. I have also taken care of numerous chronic pain patients like Mr. Grismore and thus am familiar with the standard of care which a hospital has toward its patients.

TSJH asserts that Dr. Shaneyfelt is not qualified to render opinions as to the standard of care applicable to TSJH because his report contains conclusory statements as to his training and experience related to hospital policies and fails to outline the basis of his knowledge as to policies and procedures TSJH should have had in place to prevent the surgical implantation of the recalled Medtronic battery. As Chief of General Medicine, and a physician with extensive experience with implantation surgeries, Dr. Shaneyfelt would have knowledge of hospital procedures regarding storing and using implantation devices. Furthermore, there are certain standards of medical care that apply to multiple schools of practice and any medical doctor. *See Blan v. Ali*, 7 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 1999, no pet.). If the subject matter is common to and equally recognized in all areas of practice, no specialized knowledge is required and any physician familiar with the standard may testify as to the standard of care. *See id.* at 745-46; *Gonzalez v. Padilla*, 485 S.W.3d 236, 243-44 (Tex. App.—El Paso 2016, no pet.); *Garza v. Keillor*, 623 S.W.2d 669, 671 (Tex. Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); *Hersh v. Hendley*, 626 S.W.2d 151, 154 (Tex. Civ. App.—Fort Worth 1981, no writ). It is axiomatic that a hospital should remove recalled medical devices from its inventory and not allow the surgical implantation of a recalled medical device in patients at its facility; thus, it is reasonable to conclude that this concept is both common to all fields of practice and within the common sense of a layperson. Dr. Shaneyfelt's curriculum vitae reflects he has the education and experience to be knowledgeable as to what a hospital should do and not do regarding recalled medical devices in its inventory. His report states he possesses that knowledge and that TSJH should not have had the Medtronic battery available to be surgically implanted into Grismore after its recall.

As such, we conclude that Dr. Shaneyfelt is qualified to serve as an expert on the issue of whether TSJH departed from the accepted standards of care in regard to Grismore's claims. Dr. Shaneyfelt established his expertise in the field of hospital implantation surgery protocols and satisfied the statutory requirements by showing that he (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by TSJH; (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and (3) is qualified on the basis of his training or experience to offer an expert opinion regarding those accepted standards of health

care. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b). Accordingly, we sustain Grismore's second issue.

### Standard of Care, Breach, and Causation

For standard of care and breach, the expert report must explain what the physician or health care provider should have done under the circumstances and what the physician or health care provider did instead. *Palacios*, 46 S.W.3d at 880. For causation, the expert report must explain how and why the physician's or health care provider's breach proximately caused the plaintiff's injury. *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 459–60 (Tex. 2017).

A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm, and that, absent this act or omission, the harm would not have occurred. *Costello v. Christus Santa Rosa Health Care Corp.*, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.). Causation is often established in medical malpractice cases through evidence of a "reasonable medical probability" or "reasonable probability" that the alleged injuries were caused by the negligence of one or more defendants. *Jelinek v. Casas*, 328 S.W.3d 526, 532–33 (Tex. 2010). In other words, the plaintiff must present evidence "that it is 'more likely than not' that the ultimate harm or condition resulted from such negligence." *Id.* (quoting *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 399–400 (Tex. 1993)). An expert may show causation by explaining a chain of events that begins with a defendant doctor's negligence and ends in injury to the plaintiff. *See McKellar v. Cervantes*, 367 S.W.3d 478, 485 (Tex. App.—Texarkana 2012, no pet.).

A report is deficient if it states only the expert's conclusions about the standard of care, breach of the standard of care, or causation. *See Ortiz v. Patterson*, 378 S.W.3d 667, 671 (Tex. App.—Dallas 2012, no pet.). An expert cannot simply opine that the breach caused the injury. *Van Ness*, 461 S.W.3d at 142; *Jelinek*, 328 S.W.3d at 539. Rather, the report must explain, to a reasonable degree, how and why the breach of the standard of care caused the injury based on the facts presented. *Van Ness*, 461 S.W.3d at 142; *Jelinek*, 328 S.W.3d at 539–40. The report must explain the basis of the expert's statements to link his conclusions to the facts. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *see also Taylor v. Fossett*, 320 S.W.3d 570, 575 (Tex. App.—Dallas 2010, no pet.) (expert report must contain sufficiently specific information to demonstrate causation beyond conjecture). In determining whether the causation opinions are

7

conclusory, we must remain mindful that expert-report challenges are made at this early, pre-discovery stage in the litigation, not when the merits of the health care liability claim are being presented to the factfinder to determine liability. *Cf. Baty v. Futrell*, 543 S.W.3d 689, 697 & n.10 (Tex. 2018) (rejecting argument that expert report was inadequate on standard of care, breach, and causation; concluding that expert report sufficed "particularly in light of the purposes the report is intended to serve" at early stage in litigation; and stating that "additional detail is simply not required at this stage of the proceeding").

In determining whether the expert report represents a good faith effort to comply with the statutory requirements, the court's inquiry is limited to the four corners of the report. *Christian Care Ctrs., Inc. v. Golenko*, 328 S.W.3d 637, 641 (Tex. App.—Dallas 2010, pet. denied) (citing *Palacios*, 46 S.W.3d at 878). "We may not 'fill gaps' in an expert report by drawing inferences or guessing what the expert likely meant or intended." *Hollingsworth v. Springs*, 353 S.W.3d 506, 513 (Tex. App.—Dallas 2011, no pet.). "We determine whether a causation opinion is sufficient by considering it in the context of the entire report." *Ortiz*, 378 S.W.3d at 671.

The purpose of the expert's report in a healthcare liability claim is to expose frivolous lawsuits and obtain early dismissals. *See Palacios*, 46 S.W.3d at 877. That a recalled medical device was surgically implanted into a patient is not a frivolous accusation. And we do not anticipate that anyone would argue the surgical implantation of the recalled Medtronic battery into Grismore was acceptable or should have occurred, as opposed to how and who delivered the recalled Medtronic battery to the operating room for implantation. In his report, Dr. Shaneyfelt explains that he reviewed Grismore's medical records prior to preparing his report. Based on those records, he learned that Grismore suffered from a complex regional pain syndrome. As a result, he underwent surgery to have a Medtronic spinal cord stimulator implanted in 2008. In 2015, the battery and leads of the stimulator were replaced at TSJH. The stimulator was recalled by Medtronic in 2013 and the battery was recalled in November 2014. According to Dr. Shaneyfelt's report, the battery was recalled because "there were issues with the battery where charging sessions were terminated prior to obtaining the recharge threshold, triggering a rapid depletion state of overcharge. The defects could cause a patient to experience inappropriate stimulation that causes pain, discomfort, and/or shaking." These were the same symptoms Grismore experienced with the Medtronic stimulator and replacement battery.

Dr. Shaneyfelt's report states:

8

It is standard of care for a hospital to stock devices that are free from mechanical defect and that function properly. Furthermore, it is standard of care for a hospital to remove from stock any devices and related products that have been recalled.

…

Texas Spine and Joint Hospital … violated the applicable standard of care by failing to do the following:

Stocking a device (battery of the recalled Medtronic SCS) that had been recalled.

…

Texas Spine and Joint Hospital's failure to remove the 97114 device from their stock resulted in Mr. Grismore being implanted with a device that had been recalled. Mr. Grismore's medical records indicate that following the installation of the February 2015 replacement device, he complained of spasms to his extremities as well as pain and shocks from the device and tingling and numbness to his extremities. The above breaches of the standard of care led to Mr. Grismore having undo [sic] pain and suffering. He was unable to enjoy life to its fullest due to pain. This recall also led to an unnecessary surgery in August 2016 to replace the defective device.

We conclude that Dr. Shaneyfelt's amended report provides a basis to conclude that Grismore's negligence claim against TSJH is not frivolous. *See* **Wright**, 79 S.W.3d at 52; *see also* **Palacios**, 46 S.W.3d at 879. Dr. Shaneyfelt sets forth that the battery was recalled in November 2014 and implanted into Grismore's back three months later. The February 2015 surgery was performed at TSJH. Dr. Shaneyfelt's report asserts that TSJH kept the recalled battery in stock after its recall. He further states that it is a breach of the standard of care for a hospital to keep recalled medical devices in stock. Because TSJH furnished a recalled battery for the surgery, according to Dr. Shaneyfelt, Grismore suffered pain, shocks, numbness, and tingling. This resulted in another surgery to replace the Medtronic stimulator with a non-recalled device. As such, Dr. Shaneyfelt's amended report adequately outlines the standard of care applicable to TSJH as to its possession of the Medtronic battery after its recall, the breach of that standard of care, and the causal connection between that breach and the harm suffered by Grismore when a recalled Medtronic battery was surgically implanted during his 2015 surgery at TSJH.

TSJH also argues that Dr. Shaneyfelt's report is deficient because it does not include facts establishing that TSJH had actual possession of the recalled Medtronic battery and provided same for implantation. In support, it outlines various scenarios in which TSJH would not have been involved in supplying the recalled battery, including the device manufacturer delivering the battery directly to the operating room at the time of surgery. We disagree with TSJH's argument. Dr. Shaneyfelt's report states that the Medtronic battery was recalled in November 2014, TSJH should have removed the recalled battery from its medical device inventory at that time, and the failure to remove the recalled battery from its inventory resulted in the battery's implantation into

9

Grismore's back some three months later. In short, Dr. Shaneyfelt asserts that TSJH had possession of the recalled Medtronic battery and provided same to the surgeon for implantation in 2015.

The ultimate evidentiary value of the opinions proffered by Dr. Shaneyfelt is a matter to be determined later in the litigation. TSJH may show that it did not provide the Medtronic battery surgically implanted at TSJH in 2015. Appropriate discovery will reflect how the recalled battery was delivered to the operating room to be implanted and by whom. If Dr. Shaneyfelt is incorrect that TSJH had possession of and provided the recalled battery for the surgery, TSJH can seek summary judgment relief. At this stage we do not require a claimant to marshal all his proof or present evidence in the report as if he were actually litigating the merits. *Palacios*, 46 S.W.3d at 879. Accordingly, we hold that Dr. Shaneyfelt's reports, when read together, constitute an objective, good faith effort to comply with Chapter 74's requirement to provide a fair summary of his opinion with respect to the causal relationship between TSJH's alleged breach and Grismore's injury. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(*l*), (r)(6). Grismore's third issue is sustained.

### DISPOSITION

Having sustained Grismore's second and third issues, we *reverse* the judgment of the trial court and *remand* for further proceedings consistent with this opinion.

GREG NEELEY
Justice

Opinion delivered May 31, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 31, 2019**

**NO. 12-18-00137-CV**

**BENNIE GRISMORE,**
Appellant
V.
**TEXAS SPINE & JOINT HOSPITAL, LTD., PAC,**
Appellee

Appeal from the 7th District Court

of Smith County, Texas (Tr.Ct.No. 17-0458-A)

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the judgment be **reversed** and the cause **remanded** to the trial court **for further proceedings** and that all costs of this appeal are hereby adjudged against the Appellee, **TEXAS SPINE & JOINT HOSPITAL, LTD., PAC** in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*