# NO. 12-22-00026-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MATT E. HIPKE M.D. AND MATT E. HIPKE, M.D., PLLC D/B/A ADOLESCENT CARE TEAM, APPELLANTS* | § | *APPEAL FROM THE 188TH* |
| *V.* | | |
| *JANE DOE NO. 1, AS PARENT AND NEXT FRIEND OF JOHN DOE NO. 1, A MINOR, JANE DOE NO. 2, AS PARENT AND NEXT FRIEND OF JOHN DOE NO. 2, A MINOR, JANE DOE NO. 3, AS PARENT AND NEXT FRIEND OF JOHN DOE NO. 3A & JOHN DOE NO. 3B, MINOR CHILDREN, JANE DOE NO. 4, AS PARENT AND NEXT FRIEND OF JOHN DOE NO. 4, A MINOR AND JANE DOE NO. 5, AS NEXT FRIEND AND GUARDIAN OF JOAN DOE NO. 1, APPELLEES* | §<br><br><br><br>§ | *JUDICIAL DISTRICT COURT*<br><br><br><br><br><br><br><br><br><br>*GREGG COUNTY, TEXAS* |

## MEMORANDUM OPINION

Matt E. Hipke M.D. and Matt E. Hipke, M.D., PLLC d/b/a Adolescent Care Team (collectively "Appellants") appeal the trial court's order denying their motion to dismiss Jane Doe No. 1, as Parent and Next Friend of John Doe No. 1, a minor, Jane Doe No. 2, as Parent and Next Friend of John Doe No. 2, a minor, Jane Doe No. 3, as Parent and Next Friend of John Doe No. 3a and John Doe No. 3b, minor children, Jane Doe No. 4, as Parent and Next Friend of John Doe No. 4, a minor and Jane Doe No. 5, as Next Friend and Guardian of Joan Doe No. 1 (collectively "Appellees") suit against them. We affirm.

BACKGROUND

Appellees are parents of minor children who were patients of Dr. Hipke at his practice known as Adolescent Care Team (ACT). ACT was held out to be a place for "teens and tweens" focused on health and wellness counseling. In June 2020, the Longview Police Department received a call from a parent alleging that Dr. Hipke sexually assaulted her children.[1] Following an investigation, arrest warrants were issued on August 14, 2020 alleging that Dr. Hipke committed continuous sexual abuse of a young child. The Disciplinary Panel of the Texas Medical Board also conducted an investigation and issued an order on August 10, 2020 temporarily suspending Dr. Hipke's medical license until a final or further order.

Appellees filed the instant lawsuit against Dr. Hipke and ACT alleging Dr. Hipke sexually assaulted their children over the course of treatment. Specifically, they allege causes of action for assault and battery, continuous sexual abuse of a child, negligence, and gross negligence. It is Appellees' contention that Dr. Hipke required the parents to remain in the waiting room during visits to his office, during which the alleged assaults occurred. They further contend Dr. Hipke instructed the children not to tell anyone about their discussions or examinations.

In an attempt to comply with Section 74.351 of the Texas Civil Practice and Remedies Code, Appellees provided six reports and curriculum vitae by Dr. Keith Miller on both Dr. Hipke and ACT. Dr. Hipke and ACT filed objections to Dr. Miller's reports and a motion to dismiss Appellees' claims. The trial court denied their motion and this appeal followed.

## EXPERT REPORT

In a single issue, Appellants contend the trial court abused its discretion when it denied the motion to dismiss. Specifically, they contend each of Dr. Miller's reports fail to adequately address standard of care, breach, and causation.

**Standard of Review**

A trial court's ruling on qualifications of a medical expert and the sufficiency of an expert's report under Chapter 74 is reviewed for an abuse of discretion. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). A trial court abuses its discretion if it acts without

---

[1] The children from the initial investigation are not parties to this case.

reference to guiding rules or principles. ***Van Ness***, 461 S.W.3d at 142. However, in exercising its discretion, it is incumbent upon the trial court to review the report, sort out its content, resolve any inconsistencies, and decide whether the report demonstrated a good faith effort to show that the plaintiff's claims have merit. *See id.* at 144. When reviewing factual matters committed to the trial court's discretion, an appellate court may not substitute its judgment for that of the trial court. ***Gray v. CHCA Bayshore L.P.***, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

## Expert Report Requirements

The Texas Medical Liability Act requires a claimant to serve an expert report early in the proceedings on each party against whom a health care liability claim is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp. 2021). The Texas Supreme Court has explained that "eliciting an expert's opinions early in the litigation [is] an obvious place to start in attempting to reduce frivolous lawsuits." ***Palacios***, 46 S.W.3d at 877. The purpose of evaluating expert reports is to deter frivolous claims, not to dispose of claims regardless of their merits. *See **Certified EMS, Inc. v. Potts***, 392 S.W.3d 625, 631 (Tex. 2013). A valid expert report must fairly summarize the applicable standard of care; explain how a physician or health care provider failed to meet that standard; and establish a causal relationship between the failure and the harm alleged. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6); ***Potts***, 392 S.W.3d at 630.

A report need not cover every alleged liability theory to make the defendant aware of the conduct at issue, nor does it require litigation ready evidence. ***Potts***, 392 S.W.3d at 631–32. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial. ***Id***. For the particular liability theory addressed, the report must sufficiently describe the defendant's alleged conduct. ***Id***. Such a report both informs a defendant of the behavior in question and allows the trial court to determine if the allegations have merit. ***Id***. If the trial court decides that a liability theory is supported, then the claim is not frivolous, and the suit may proceed. ***Id***. If a health care liability claim contains at least one viable liability theory, as evidenced by an expert report meeting the statutory requirements, the claim cannot be frivolous. ***Id***.

A report is deficient if it states only the expert's conclusions about the standard of care, breach of the standard of care, or causation. *See **Ortiz v. Patterson***, 378 S.W.3d 667, 671 (Tex. App.—Dallas 2012, no pet.). An expert cannot simply opine that the breach caused the injury.

3

*Van Ness*, 461 S.W.3d at 142; *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010).  Rather, the report must explain, to a reasonable degree, how and why the breach of the standard of care caused the injury based on the facts presented. *Van Ness*, 461 S.W.3d at 142; *Jelinek*, 328 S.W.3d at 539–40. The report must explain the basis of the expert's statements to link his conclusions to the facts. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *see also* *Taylor v. Fossett*, 320 S.W.3d 570, 575 (Tex. App.—Dallas 2010, no pet.) (expert report must contain sufficiently specific information to demonstrate causation beyond conjecture).

In determining whether the expert report represents a good faith effort to comply with the statutory requirements, the court's inquiry is limited to the four corners of the report. *Christian Care Ctrs., Inc. v. Golenko*, 328 S.W.3d 637, 641 (Tex. App.—Dallas 2010, pet. denied) (citing *Palacios*, 46 S.W.3d at 878). "We may not 'fill gaps' in an expert report by drawing inferences or guessing what the expert likely meant or intended." *Hollingsworth v. Springs*, 353 S.W.3d 506, 513 (Tex. App.—Dallas 2011, no pet.). "We determine whether a causation opinion is sufficient by considering it in the context of the entire report." *Ortiz*, 378 S.W.3d at 671.

## Standard of Care and Breach

Appellants contend Dr. Miller's reports failed to adequately set forth the applicable standard of care.  Specifically, they urge that Dr. Miller failed to reference specific medical records, made conclusory statements, and relied only on Appellees' pleadings.  They also contend the reports are "devoid of facts."  Appellants urge that because the reports fail to adequately provide the standard of care, they are also deficient regarding breach of that standard.

An expert's report is sufficient if it provides a "fair summary" of the expert's opinions about the applicable standards of care, how the physician failed to meet those standards, and how that failure caused the injury, harm, or damages claimed. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). An adequate expert report "must inform the defendant of the specific conduct the plaintiff has called into question," and it "must provide a basis for the trial court to conclude that the claims have merit." *Palacios*, 46 S.W.3d at 879; *accord* *Baty v. Futrell*, 543 S.W.3d 689, 693 (Tex. 2018). The report must provide sufficient information to demonstrate "what care was expected, but not given." *Palacios*, 46 S.W.3d at 880. In considering a challenge to the sufficiency of an expert report, we must "view the report in its entirety, rather than isolating specific portions or sections." *Baty*, 543 S.W.3d at 694.

4

The reports for each Appellee are essentially identical, only the patient's initials and dates of service differ.  Therefore, we will address the sufficiency of the reports together.

Dr. Miller's reports begin by summarizing his background and expertise.  He indicates that he reviewed Appellees' medical records from "Matt E. Hipke, M.D./The Adolescent Care Team in Longview, Texas."  Dr. Miller identifies as significant facts that Dr. Hipke opened his own private practice called the "Adolescent Care Team" or "ACT."  At ACT, Dr. Hipke treated "teens and tweens" and focused on health and wellness counseling, "treating their medical concerns as well as teaching about their life concerns."  He  states that while Dr. Hipke advertised and encouraged parents to bring their "teens and tweens" to his office for counseling, Dr. Hipke is not a licensed psychiatrist, counselor, or therapist.  He indicates that  patients were seen for medical care by Dr. Hipke at ACT.  During those visits, Dr. Hipke did not allow anyone else in the room.  And "on several occasions, Matt Hipke sexually assaulted, molested, and or [sic] sexually abused [patient] during [patient's] visits to ACT." Dr. Miller further states that "Matt Hipke told [patient] that [patient] could not tell anyone about their meetings or 'examinations.'"  Dr. Miller noted that Dr. Hipke has a history of abusing other minor children, had his medical license suspended, and has been arrested and charged with sexually abusing patients.

While Dr. Miller does not disclose the medical treatment the patients sought from Dr. Hipke, he states that "at the time of the medical treatment . . . I was treating patients with conditions similar to those experienced by [patient]." He further states that he is familiar with the applicable standards of care applicable to the assessment, diagnosis, and treatment of patients similar to Appellees' children.

Dr. Miller then delineates the specific standards of care applicable to Dr. Hipke and ACT:

> 1. The standard of care required that from [dates of service], during the time of his care and treatment of [patient] Matt Hipke should have never examined [patient] a minor child, alone without the presence of a parent or a guardian.
>
> 2. The standard of care required that from [dates of service], during the time of his care and treatment of [patient] Matt Hipke should have never removed or had [patient] a minor child, remove any article of his clothing while Hipke was alone with [patient] without the presence of a parent or a guardian.
>
> 3. The standard of care required that from [dates of service], during the time of his care and treatment of [patient] Matt Hipke should have never abused [patient] a minor child, verbally, physically, or sexually.

5

4. The standard of care required that from [dates of service], during the time of their care and treatment of [patient] ACT should have intervened to prevent Matt Hipke from examining [patient] a minor child, alone without the presence of a parent or a guardian.

5. The standard of care required that from [dates of service], during the time of their care and treatment of [patient] ACT should have intervened to prevent Matt Hipke from removing or having [patient] a minor child, remove any article of his clothing while Hipke was alone with [patient] without the presence of a parent or a guardian.

6. The standard of care required that from [dates of service], during the time of their care and treatment of [patient] ACT should have intervened to prevent Matt Hipke from abusing [patient] a minor child, verbally, physically, or sexually.

Appellants argue that Dr. Miller's reports fail to reference the children's medical records or their complaints in the clinical setting. They assert that the standard of care is defined by what an ordinarily prudent provider would have done under the same or similar circumstances. Therefore, they urge Dr. Miller's reports should have explained what medical treatment each patient sought. As a result, they contend the reports are deficient.

Contrary to Appellants' assertions, Dr. Miller need not detail the children's medical complaints under these circumstances. Dr. Miller's reports state that he reviewed each patient's medical records and details the applicable standard of care based on the patient's medical history. He also based his opinion on his education, training, and experience, which is detailed in the report. The exact nature of the medical complaints is unnecessary to determine whether a patient should be protected from assault.

In addition, our sister courts have held that an expert report addressing assaultive conduct in the medical setting is sufficient if it indicates what the healthcare provider should have done differently to protect the patient. *See Jacksboro Nursing Operations, LLC v. Norman*, No. 02-20-00262-CV, 2021 WL 1421431, at *11 (Tex. App.—Fort Worth April 15, 2021, no. pet.) (mem. op.); *Texarkana Nursing & Healthcare Ctr., LLC v. Lyle*, 388 S.W.3d 314, 318-22 (Tex. App.—Texarkana 2012, no pet.); *Gracy Woods I Nursing Home v. Mahan*, 520 S.W.3d 171, 187 (Tex. App.—Austin 2017, no pet.); *Kingwood Pines Hosp., LLC v. Gomez*, 362 S.W.3d 740, 750 (Tex. App.—Houston [14th Dist.] 2011, no. pet.). In addition to explaining that the patients should not have been assaulted, as detailed above, Dr. Miller's report explains what both Dr. Hipke and ACT should have done differently to prevent the continued assaults, i.e., Dr. Hipke should not have examined a child alone, removed an article of clothing while alone with a child, or assaulted a child, and that ACT should have intervened to prevent these activities.

Accordingly, because Dr. Miller's report explains what should have been done differently, and explicitly states that his opinions are based on more than just Appellees' pleadings, it is sufficient on both standard of care and breach. At this juncture of the proceeding, this is all the reports must do. *See **Palacios***, 46 S.W.3d at 879-80.

**Causation**

Appellants further contend Dr. Miller's report is deficient regarding causation. They urge that the reports do not show the causal relationship between a breach of the standard of care and the patients' alleged damages.

A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm, and that, absent this act or omission, the harm would not have occurred. ***Costello v. Christus Santa Rosa Health Care Corp.***, 141 S.W.3d 245, 249 (Tex. App.—San Antonio 2004, no pet.). Causation is often established in medical malpractice cases through evidence of a "reasonable medical probability" or "reasonable probability" that the alleged injuries were caused by the negligence of one or more defendants. ***Jelinek***, 328 S.W.3d at 532–33. In other words, the plaintiff must present evidence "that it is 'more likely than not' that the ultimate harm or condition resulted from such negligence." *Id.* (quoting ***Kramer v. Lewisville Mem'l Hosp.***, 858 S.W.2d 397, 399–400 (Tex. 1993)). An expert may show causation by explaining a chain of events that begins with a defendant doctor's negligence and ends in injury to the plaintiff. *See **McKellar v. Cervantes***, 367 S.W.3d 478, 485 (Tex. App.—Texarkana 2012, no pet.).

In pertinent part, Dr. Miller's report states the following regarding causation:

> As a direct cause, Matt Hipke failed to comply with the standards of care regarding [patient]. The failure to comply with these standards caused, within a reasonable degree of medical and nursing, probability and certainty, [patient] to suffer verbal, physical, and sexual abuse, which resulted in emotional reactions such as fear, shame, humiliation, guilt, and self–blame; depression and anxiety, symptoms of posttraumatic stress; intrusive or recurring thoughts of the abuse as well as nightmares or flashbacks; distorted self-perception; along with the development of a belief that [patient] himself caused the sexual abuse and that he deserved it, which will result in self-destructive relationships.
>
> Had this physician provided adequate care to [patient] by never examining [patient] a minor child, alone without the presence of a parent or a guardian, then more likely than not and to a reasonable degree of medical and nursing, probability and certainty, [patient] would not have suffered verbal, physical, and sexual abuse, which resulted in emotional reactions such as fear, shame, humiliation, guilt, and self–blame; depression and anxiety, symptoms of posttraumatic stress; intrusive or recurring thoughts of the abuse as well as nightmares or flashbacks; distorted self-perception;

along with the development of a belief that [patient] himself caused the sexual abuse and that he deserved it, which will result in self-destructive relationships.

. . .

Had this physician provided adequate care to [patient] by never removing or having [patient] a minor child, remove any article of his clothing while Hipke was alone with [patient] without the presence of a parent or a guardian, then more likely than not and to a reasonable degree of medical and nursing, probability and certainty, [patient] would not have suffered verbal, physical, and sexual abuse, which resulted in emotional reactions such as fear, shame, humiliation, guilt, and self–blame; depression and anxiety, symptoms of posttraumatic stress; intrusive or recurring thoughts of the abuse as well as nightmares or flashbacks; distorted self-perception; along with the development of a belief that [patient] himself caused the sexual abuse and that he deserved it, which will result in self-destructive relationships.

. . .

Had this physician provided adequate care to [patient] by never abusing [patient] a minor child, verbally, physically, or sexually, then more likely than not and to a reasonable degree of medical and nursing, probability and certainty, [patient] would not have suffered verbal, physical, and sexual abuse, which resulted in emotional reactions such as fear, shame, humiliation, guilt, and self–blame; depression and anxiety, symptoms of posttraumatic stress; intrusive or recurring thoughts of the abuse as well as nightmares or flashbacks; distorted self-perception; along with the development of a belief that [patient] himself caused the sexual abuse and that he deserved it, which will result in self-destructive relationships.

. . .

ACT employees were aware of, and often disagreed with, Matt Hipke's secretive and suspicious behavior related to this treatment of minor children. Yet, ACT employees never intervened or notified anyone. Based on Matt Hipke's behavior, ACT employees knew, or should have known that Matt Hipke was engaging in improper behavior with minor children.

. . .

As a direct cause, ACT failed to comply with the standards of care regarding [patient]. The failure to comply with these standards caused, within a reasonable degree of medical and nursing, probability and certainty, [patient] to suffer verbal, physical, and sexual abuse, which resulted in emotional reactions such as fear, shame, humiliation, guilt, and self–blame; depression and anxiety, symptoms of posttraumatic stress; intrusive or recurring thoughts of the abuse as well as nightmares or flashbacks; distorted self-perception; along with the development of a belief that [patient] himself caused the sexual abuse and that he deserved it, which will result in self-destructive relationships.

Had ACT provided adequate care to [patient] by intervening to prevent Matt Hipke from examining [patient] a minor child, alone without the presence of a parent or a guardian, then more likely than not and to a reasonable degree of medical and nursing, probability and certainty, [patient] would not have suffered verbal, physical, and sexual abuse, which resulted in emotional reactions such as fear, shame, humiliation, guilt, and self–blame; depression and anxiety, symptoms of posttraumatic stress; intrusive or recurring thoughts of the abuse as well as nightmares or flashbacks; distorted self-perception; along with the development of a belief that [patient] himself caused the sexual abuse and that he deserved it, which will result in self-destructive relationships.

. . .

Had ACT provided adequate care to [patient] by intervening to prevent Matt Hipke from removing or having [patient] a minor child, remove any article of his clothing while Hipke was alone with [patient] without the presence of a parent or a guardian, then more likely than not and to a reasonable degree of medical and nursing, probability and certainty, [patient] would not have suffered verbal, physical, and sexual abuse, which resulted in emotional reactions such as fear, shame, humiliation, guilt, and self–blame; depression and anxiety, symptoms of posttraumatic stress; intrusive or recurring thoughts of the abuse as well as nightmares or flashbacks; distorted self-perception; along with the development of a belief that [patient] himself caused the sexual abuse and that he deserved it, which will result in self-destructive relationships.

. . .

Had ACT provided adequate care to [patient] by intervening to prevent Matt Hipke from abusing [patient] a minor child, verbally, physically, or sexually, then more likely than not and to a reasonable degree of medical and nursing, probability and certainty, [patient] would not have suffered verbal, physical, and sexual abuse, which resulted in emotional reactions such as fear, shame, humiliation, guilt, and self–blame; depression and anxiety, symptoms of posttraumatic stress; intrusive or recurring thoughts of the abuse as well as nightmares or flashbacks; distorted self-perception; along with the development of a belief that [patient] himself caused the sexual abuse and that he deserved it, which will result in self-destructive relationships.

. . .

More likely than not, this failure on the part of Matt Hipke and ACT in Longview, Texas, to practice in an acceptable manner directly resulted in [patient]'s verbal, physical, and sexual abuse, which resulted in emotional reactions such as fear, shame, humiliation, guilt, and self–blame; depression and anxiety, symptoms of posttraumatic stress; intrusive or recurring thoughts of the abuse as well as nightmares or flashbacks; distorted self-perception; along with the development of a belief that [patient] himself caused the sexual abuse and that he deserved it, which will result in self-destructive relationships. As more specifically set forth above the actions and inactions of this facility and this physician, caused the conditions and complications described above.

More likely than not, and to a reasonable degree of medical and nursing, probability and certainty, [patient] will continue to require physician care, counseling services, outpatient treatment or even inpatient care, medications, and rehabilitative services for the rest of his life, as a result of the harm and damages which he suffered at the hands of ACT and the sexual predator Matt Hipke.

In summary, Matt Hipke and ACT in Longview, Texas, did not meet the standard of care in their treatment of [patient] It is my opinion, based on my medical education, experience, and training and based upon a reasonable degree of medical and nursing, probability and certainty, that these grossly negligent acts and omissions as stated above proximately and directly caused [patient]'s verbal, physical, and sexual abuse, which resulted in emotional reactions such as fear, shame, humiliation, guilt, and self–blame; depression and anxiety, symptoms of posttraumatic stress; intrusive or recurring thoughts of the abuse as well as nightmares or flashbacks; distorted self-perception; along with the development of a belief that [patient] himself caused the sexual abuse and that he deserved it, which will result in self-destructive relationships.

It is my opinion that Matt Hipke and ACT in Longview, Texas, knew that their failure to meet the standards of care would put [patient] at extreme risk of harm and knew that this failure to meet these standards would likely cause complications or injuries to [patient]. Nevertheless, Matt Hipke and ACT in Longview, Texas, still failed to follow the above standards. Had the standards of care been followed by Matt Hipke and ACT in Longview, Texas, more likely than not and based upon a reasonable degree of medical and nursing, probability and certainty, [patient] would not have suffered the verbal, physical, and sexual abuse, which resulted in emotional reactions such as fear, shame, humiliation, guilt, and self–blame; depression and anxiety, symptoms of posttraumatic stress; intrusive or recurring thoughts of the abuse as well as nightmares or

flashbacks; distorted self-perception; along with the development of a belief that [patient] himself caused the sexual abuse and that he deserved it, which will result in self-destructive relationships.

Appellants contend that Dr. Miller's statements on causation are conclusory. They urge that the reports are identical for each patient and they fail to reference the patients' respective medical, psychiatric, counseling, or other records as support. Appellants state that Dr. Miller failed to provide any facts that are linked to his conclusions, rendering his opinion conclusory.

In determining whether the causation opinions are conclusory, we must remain mindful that expert-report challenges are made at this early, pre-discovery stage in the litigation, not when the merits of the health care liability claim are being presented to the factfinder to determine liability. *Grismore v. Tex. Spine & Joint Hosp., Ltd., PAC*, 578 S.W.3d 684, 692 (Tex. App.—Tyler 2019, no pet.). Contrary to Appellants' assertion, a review of the entire report discloses that Dr. Miller did more than merely opine that Appellees suffered harm as a result of Dr. Hipke's and ACT's conduct, and his reports require no inference to establish the causal connection. *Cf. Bowie Mem'l Hosp.*, 79 S.W.3d at 53.

Dr. Miller explained the long-term effects of childhood sexual abuse and explained that Appellees are already suffering from some of those effects. He further opined that, as a result of the assaults, they will likely need long-term medical care. Dr. Miller explained that his opinions are based on his experience and education, as well as his review of Appellees' respective medical records. Therefore, Dr. Miller explained, to a reasonable degree of medical probability, a chain of events beginning with Dr. Hipke's alleged actions that was a foreseeable substantial factor resulting in Appellees' injuries. *See Jelinek*, 328 S.W.3d at 532-33. As such, the reports are sufficient with respect to causation.

## Summation

Because Dr. Miller's reports adequately address the elements of standard of care, breach, and causation, we conclude the trial court did not abuse its discretion by finding the reports to be adequate under Section 74.351 and denying Appellants' motion to dismiss. *See Van Ness*, 461 S.W.3d at 142. We overrule Appellants' sole issue.

### DISPOSITION

Having overruled Appellants' sole issue, we *affirm* the trial court's order denying Appellants' motion to dismiss.

10

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered May 31, 2022.
*Panel consisted of Worthen, C.J., and Hoyle, J.*
*Neeley, J., not participating.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 31, 2022**

**NO. 12-22-00026-CV**

**MATT E. HIPKE M.D. AND MATT E. HIPKE, M.D.,
PLLC D/B/A ADOLESCENT CARE TEAM,**
Appellants
V.
**JANE DOE NO. 1, AS PARENT AND NEXT FRIEND OF JOHN DOE NO. 1, A MINOR,
JANE DOE NO. 2, AS PARENT AND NEXT FRIEND OF JOHN DOE NO. 2, A MINOR,
JANE DOE NO. 3, AS PARENT AND NEXT FRIEND OF JOHN DOE NO. 3A & JOHN
DOE NO. 3B, MINOR CHILDREN, JANE DOE NO. 4, AS PARENT AND NEXT
FRIEND OF JOHN DOE NO. 4, A MINOR AND JANE DOE NO. 5, AS NEXT FRIEND
AND GUARDIAN OF JOAN DOE NO. 1,**
Appellees

Appeal from the 188th District Court

of Gregg County, Texas (Tr.Ct.No. 2020-1931-A)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the trial court's order.

It is therefore ORDERED, ADJUDGED and DECREED that the order denying Appellants' motion to dismiss of the court below **be in all things affirmed**, and that all costs of this appeal be, and the same are, adjudged against the Appellants, **MATT E. HIPKE**

12

**M.D. AND MATT E. HIPKE, M.D., PLLC D/B/A ADOLESCENT CARE TEAM**, for which let execution issue; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., and Hoyle, J.*
*Neeley, J., not participating.*